Tesch vs. The Milwaukee Electric Railway & Light Co.

---

TESCH, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*December 13, 1900 — January 8, 1901.*

*Street railways: Negligence: Injury to person driving across tracks: Contributory negligence: Duty to look and listen: Right of way: Special verdict: Instructions to jury.*

1. The doctrine of comparative negligence does not prevail in this state. Therefore, in a case involving the subject of contributory negligence, the rule that obtains in some jurisdictions does not apply,

| | |
|---|---|
| 108 | 593 |
| 110 | 3156 |
| 110 | 7157 |
| 110 | 1158 |
| 110 | 7159 |
| 110 | 6355 |
| s53 LRA | 618 |
| 54 LRA 424n | |
| 108 | 593 |
| 54 LRA 802n | |
| 108 | 593 |
| 117 | 8 38 |
| 117 | 9 40 |

Tesch vs. The Milwaukee Electric Railway & Light Co.

that if plaintiff was guilty of contributory negligence he may yet recover if defendant discovered his peril in time to have avoided injuring him by the exercise of ordinary care; nor the rule that, notwithstanding plaintiff's negligence, he may recover if defendant was guilty of gross negligence, speaking of fault not amounting to actual intent to injure, or that wanton disregard for the safety of others equivalent thereto sometimes called constructive intent; nor the rule that if plaintiff's negligence preceded that of the defendant in time, and the latter by the exercise of ordinary care could have avoided injuring the former and failed to do so, the negligence of the former is considered a condition, and the negligence of the latter the sole proximate cause of the injury, notwithstanding such condition was a mere continuance of the negligent act and concurred with defendant's fault at the instant of the accident to produce it.

2. The doctrine in this state is that contributory negligence of the plaintiff, however slight, precludes his recovering of the defendant on the ground of negligence, regardless of the degree thereof, speaking of conduct characterized by inadvertence, not that misconduct known in the decisions of this court as gross negligence.

3. Before crossing a railway track, regardless of whether it be a steam or electric street railroad, a person should look both ways and listen for a coming car and perform that duty when and where it will be reasonably certain to effect its purpose; and diversion of attention, generally speaking, will not excuse the performance of such duty; neither will misconduct on the part of the railway company.

4. If in taking a special verdict questions be submitted covering singly all the material controverted facts in issue, a refusal to submit other questions covering the same subjects in a different form, or covering evidentiary facts, is proper.

5. A refusal to instruct a jury in accordance with suggestions contained in special questions presented for submission to them, or the giving of instructions in regard to a particular subject, is not reversible error, if, by the verdict rendered, it is clear that the facts necessary to the applicability of such instructions given or refused did not exist.

6. An ordinary traveler upon a public street where a street-car line is located and operated under a public franchise having no restrictions or regulations as to the manner of operating cars, has not the same right to go upon the track and compel the stopping of a car to enable him to pass over the track as the operator of the car has to delay his passage to enable the car to pass.

Tesch vs. The Milwaukee Electric Railway & Light Co.

7. The ordinary traveler has the right of way in crossing a street-car track in advance of an approaching car, if, calculating reasonably from the standpoint of a person of ordinary care and intelligence so circumstanced, he has sufficient time, proceeding reasonably, to clear the track without retarding the movement of the car if its rate of speed is lawful; and if it turns out that he has miscalculated, he is not chargeable with want of ordinary care or with violating any rights of the railroad company if it is compelled to retard the motion of the car or even stop it to enable such person to cross the track; and in no event is such a person a wrongdoer so as to excuse the operator of the car from not exercising ordinary care to avoid injuring such person, though the fault of such person may preclude him from recovering damages for any injury that may result in part from his conduct.

8. If a person about to cross a street-car track in the circumstances above stated, observes a car that is coming towards him at an unreasonable rate of speed, or if in the exercise of ordinary care he ought to observe it, such care requires him to take that into consideration in determining the probability of his being able, proceeding reasonably under the circumstances, to clear the track and avoid being injured by a collision with the car.

9. If a person, traveling with a horse and carriage, approaches a street crossing to pass over double street-car tracks located on the street running at right angles with that on which he is approaching, observes a car coming from the left on the track nearer him and one from the right on the other track, and stops for such cars to pass, the horse being located about ten feet from the nearest car rail, and the car from the left passes by and stops at the right-hand cross-walk and the one from the right passes over the street,— the conditions being such that he can see the farther track at the right, looking by the front end of the stationary car, from a point about 100 feet from the crossing to a point about 100 feet further to the right and can see such track in front of him to the left of the stationary car for about forty feet from the point of crossing, leaving about sixty feet of the farther track to the right out of view because of the stationary car,— and a second car is approaching from the right on the farther track, a little way behind the first car coming from that direction, and at the instant the second car passes by he looks both ways for other approaching cars and sees one coming from the left, though not dangerously near, and none coming from the right, though at the instant of taking the observation one has just passed out of view within the sixty feet of track shut out from observation by the stationary car and is approaching at a speed

of ten miles an hour, an unusual rate of speed for that situation and under the circumstances, without giving any signal of its approach, and he then starts to cross the track believing the way to be safe, he is not guilty of a want of ordinary care as a matter of law. The rule requiring one to take an observation of a railroad track before attempting to cross it, reasonably calculated to acquaint him of the presence of cars in dangerous proximity to the crossing, is not in conflict herewith.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Affirmed.*

Action to recover damages for a personal injury. The evidence produced bearing on the issues made by the pleadings established or tended to establish the following:

Virginia street runs east and west and Reed street crosses it at right angles running north and south, in the city of Milwaukee. Such streets are about sixty feet wide between curb lines. The defendant has a double-track electric street railroad on Reed street, operated by the overhead trolley system. The streets are much used, particularly at the crossing. Street cars pass both ways at short intervals, those going south using the west track and those going north the east track. Plaintiff was perfectly familiar with the crossing and all the dangers attending its use by travelers with teams. Both streets were sufficiently level to permit a view of them either way by one standing at the crossing. There were buildings on the corners on the west side, so that one approaching the railway tracks on Virginia street from that side could not see the tracks up and down the street till he arrived at the crossing.

On November 26, 1897, commencing about 8 o'clock a. m., there was a snowstorm which lasted till after the happening of the injury, which was a little later in the day. The falling snow prevented a clear view of objects up or down the street, but the difficulty was not so great but that an approaching street car could readily be seen for a distance of more than 150 feet. The falling snow and other weather

conditions caused the street-car track to be slippery, so that it was impracticable for a motorman to control his car as completely as he otherwise could. On account of such conditions the motorman on the car that produced the injury was unable to determine readily within what distance he could stop it, because the wheels were liable to slip on the track.

In the circumstances stated, plaintiff and his brother, riding in a covered buggy, with no curtains thereon, drawn by a gentle horse, approached the crossing from the west, driving on Virginia street. As they arrived at a point where they had a full view of the street-car tracks both ways on Reed street, they observed two cars approaching, one from the north on the west track and one from the south on the east track. The cars were so near the crossing that plaintiff did not think it was safe to attempt to cross. He stopped his horse so that its feet were located about twelve feet from the west rail and the buggy seat was located about at the curb line, distant about twenty-five feet from such rail. While plaintiff was so located the car coming from the north passed and stopped to allow a passenger to alight at the south crosswalk. Immediately thereafter the car going north on the east track passed over the crossing without stopping. Plaintiff then looked both ways for coming cars and observed one coming from the north about 150 feet from the crossing, but did not see any coming from the south, though one had just disappeared from view behind the car that was located at the south crosswalk. The car approaching from the north was moving pretty fast and the motorman, observing plaintiff's purpose to cross, sounded his gong vigorously. Plaintiff, thinking he had time to make the crossing, started and moved pretty fast in order to do so. He passed over the west track safely and as he did so he looked to the south and saw a car coming from that direction and so near that it was impossible for him to es-

Tesch vs. The Milwaukee Electric Railway & Light Co.

cape from the region of danger before the injury occurred. As the hind wheels of his buggy were about to pass over the east rail, he being located about over the rail, the car struck the buggy, partially demolished it, and threw him out forward and to one side a distance of some twenty-five feet, where he landed on the surface of the street and was injured.

There was some conflict in the evidence as to whether the gong on the car was sounded; also as to the speed of the car and the distance it traveled after striking plaintiff's buggy. On the part of plaintiff the evidence was to the effect that it was going faster than usual and some ten miles an hour. On the part of defendant the evidence was very positive to the effect that it was going at a moderate and usual rate of speed and not over five to seven miles an hour. As to the sounding of the gong, the evidence on the part of plaintiff was that he did not hear it; that other witnesses in the vicinity did not; and that if it had been sounded plaintiff would have heard it. On the part of defendant the testimony of the motorman, passengers in the car, and others was to the effect that the gong was sounded vigorously and seasonably. As to the distance the car traveled after striking plaintiff's buggy, the evidence on his part was to the effect that it passed clear over the crossing and a considerable distance beyond, one witness placing it, as far as half a block. On the part of defendant the evidence was to the effect that the current was reversed and the brakes set as soon as practicable after plaintiff was observed, and that the car stopped still before passing entirely over the north crosswalk. The evidence was further to the effect that the car that stopped at the south crosswalk stood there till about the instant plaintiff started to cross the tracks; that as he arrived at a point where he could have seen the north-bound car had he been looking in that direction, and the motorman could have seen him, such car

was very near the crossing. Plaintiff testified that the car he saw coming from the north 150 feet away was coming so fast that he hurried to get by; that he did not see the other car till it was nearly to him, and then it was too late. ·

The jury rendered the following verdict, the substance of the findings being given, not the particular language of the verdict:

(1) Plaintiff was injured at the time and place alleged by one of defendant's street cars.

(2) The car was going at an unreasonable and dangerous rate of speed when the injury occurred.

(3) Such unusual and dangerous rate of speed was the proximate cause of the injury.

(4) The motorman, in the exercise of ordinary care, ought to have seen plaintiff's peril in time to have avoided injuring him.

(5) The failure to observe such peril in time to avoid the collision was not the proximate cause of the injury.

(6) The motorman did not signal the approach of his car to the crossing by sounding the gong.

(7) Said failure to sound the gong was not the proximate cause of the injury.

(8 and 9 omitted as immaterial.)

(10) The motorman, after seeing plaintiff's peril, used all reasonable means to avoid the collision.

(11 and 12 omitted as immaterial.)

(13) Plaintiff was not guilty of a want of ordinary care in that he did not see the car in time to avoid the injury.

(14) Plaintiff was not guilty of any want of ordinary care which contributed to his injury.

(15) Plaintiff suffered damages to the amount of $800.

At the close of the evidence a motion for a nonsuit was denied. On the coming in of the verdict there was a motion on the part of defendant to change the finding on the subject of contributory negligence of plaintiff, so as to find

that he was guilty thereof; also to change the affirmative to negative answers to the questions relating to the speed of the car and its effect in producing the injury. The motions were made specific and proper upon the theory that the evidence conclusively established the facts as defendant desired them to appear in the findings. All of defendant's motions were denied, and exceptions to the rulings in that regard and other rulings were duly preserved for review. Judgment was rendered in plaintiff's favor on the verdict.

For the appellant there was a brief by *Spooner, Rosecrantz & Spooner*, and oral argument by *C. P. Spooner*.

*Edgar L. Wood*, for the respondent.

MARSHALL, J. This case involves a few plain familiar principles. Little or no help can be obtained by citing cases from other courts where the facts were materially different or the principles applied not recognized as law by this court. There are no precedents, as regards the facts, in the decided cases of this or other courts, that can be considered controlling or materially helpful. Counsel for respondent has, with great industry and some misdirected professional energy, brought to our attention a mass of cases in support of the judgment; but so many of them are out of harmony with the settled rules of law recognized here that an attempt to apply them to the facts of this case is confusing instead of helpful. There is little use in referring to adjudications to the effect that a diversion of attention will excuse a person, approaching a railway track with the intention of crossing the same, from performing the duty to look both ways and listen for coming cars, so as to carry the case to the jury on the question of whether the plaintiff, seeking to recover upon the ground of the defendant's negligence, was guilty of contributory negligence, because the rule here is, as it is in most courts, that such duty is governed by a rule of law and not to be determined as a fact, from evidence, by the jury. It

is as useless to bring to the attention of this court cases
where it has been held that, though the duty to look and
listen exists, the testimony of the plaintiff that he performed
that duty, yet did not see nor hear a coming car that was
unquestionably within his sight and hearing, is sufficient to
carry the case to the jury on the subject of his contributory
negligence; because the rule here is that the duty to see
those dangers that are in plain sight and hear those that are
plainly within hearing by paying proper attention thereto,
is just as absolute as is the duty to look and listen for them,
and that a jury cannot be permitted to say that a person,
called upon to perform that duty, did not see or hear such
dangers, and base a verdict thereon.    It is just as useless to
urge upon the attention of this court adjudications to the
effect that if plaintiff was guilty of contributory negligence
he may yet recover if the defendant, after observing his peril,
could have avoided inflicting the injury complained of, by
the exercise of ordinary care; or cases to the effect that, not-
withstanding plaintiff's contributory negligence, he may yet
recover if the defendant was guilty of gross negligence,
speaking of his conduct as characterized by negligence
strictly so called, not intent, actual or constructive, to do
the deed (see *Bolin v. C., St. P., M. & O. R. Co., ante,* p. 333);
or adjudications to the effect that if plaintiff's negligence
preceded defendant's a considerable period of time, by the
act of going upon the track, and defendant by the exercise
of ordinary care could have avoided the occurrence of the
accident, the negligence of the plaintiff must be considered
remote and his situation at the time of the injury a mere
condition of it, and the negligence of the defendant the sole
proximate cause thereof, notwithstanding plaintiff's negli-
gence actually continued to and met that of the defendant
at the instant of the accident.    Such rules are found, in whole
or in part, where the doctrine of comparative negligence, in
whole or in part, prevails.    But it does not prevail here at

Tesch vs. The Milwaukee Electric Railway & Light Co.

all. The doctrine of this court, like that of all courts that entirely discountenance comparative negligence, is that contributory negligence of the plaintiff, however slight, precludes his recovering in an action grounded on the defendant's negligence, however great such negligence may have been. In this we do not refer to wilful misconduct of a wrongdoer, which has come to be spoken of as gross negligence, meaning, however, intent, actual or constructive, to do the injury, and not negligence at all, strictly so called. The doctrine of contributory negligence applied here has the sanction of the common law from time immemorial, the support of most of the courts and standard text writers, and half a century of the adjudications of this court. To change it, otherwise than by legislative enactment, would be judicial usurpation. Therefore it is idle to urge upon our attention authorities that cannot be applied except by such transgression.

Cases supporting each of the lines of comparative negligence, and the other rules to which we have referred, are presented here as bearing on plaintiff's right to recover, and many more might be found, especially in the inferior appellate courts of some of the states. Upon the faith of such authorities, it is believed, much money has been uselessly expended and false, unattainable hopes built up. Other courts have found it necessary, by vigorous language, to stay the tendency of such mischief. In a very recent case in Missouri the court used these emphatic words: "There is no comparative negligence in this state. The rule that the negligence of the plaintiff [want of ordinary care was undoubtedly meant] which contributed directly to the cause of the injury will prevent a recovery is without exception or qualification." The court was speaking of where recovery is sought on the ground of defendant's want of ordinary care. *Hogan v. Citizens' R. Co.* 150 Mo. 36.

What has been said is addressed to the efforts of respond-

Wis.]                JANUARY TERM, 1901.                603.

Tesch vs. The Milwaukee Electric Railway & Light Co.

ent's counsel to combat the main contentions upon which reliance is placed to secure a reversal of the judgment, viz., that the verdict finds and the evidence shows, as a matter of law, contributory negligence. Against that the authorities were cited, among others, which we have seen fit to criticise in a general way only, there being too many of them to warrant a review thereof in detail. We will reserve the discussion of the grounds put forth by appellant's counsel to support their main point, and the reasons for the conclusion we have arrived at, for the closing subject of this opinion.

It does not appear to be contended that there was not evidence sufficient to carry the case to the jury on the subject of whether the car was run at a negligent rate of speed and whether such fact, under the circumstances, was a proximate cause of the injury; so we need not discuss that question, though it is proper to say, in passing, that the situation disclosed by the evidence fairly raised a jury question as to each of such elements.

Some complaint is made because the court refused to submit questions requested by counsel for appellant, but it does not seem that there is any merit therein, as all the facts in issue were fully covered by the special verdict.

Complaint is also made because the court neglected to instruct the jury in regard to the duty of plaintiff to look and listen before going upon the railway track, in accordance with the suggestions contained in the questions. Also because of instructions which the court did give on that subject. In answer to such complaints, it is sufficient to say that the evidence is undisputed that plaintiff did both look and listen for a car coming from the south on the east track, before he attempted to cross it, and that he neither saw nor heard a car; and the circumstantial evidence and the verdict are consistent therewith. So it must be said that the evidence clearly shows that, at the instant when plaintiff started

to cross, the coming car that did the injury was obscured from his view by the car standing at the south crosswalk. The jury found as a fact, on conflicting evidence, that the car gong was not sounded.   In view of such undisputed facts and the fact found by the jury, if error was committed either in the instructions in respect to plaintiff's duty to look and listen for a coming car and to see and observe the speed thereof, or in refusing instructions in regard thereto according to the suggestions contained in the questions which appellant's counsel requested the court to submit to the jury, no harm resulted to it therefrom.   So the case comes down to what we have said is the main contention.

Appellant's counsel insist that the verdict indicates such contributory fault, because the reasonable meaning of the finding that the motorman ought, in the exercise of ordinary care, to have seen respondent in time to have avoided the injury, is that he ought to have seen him before the view was cut off by the standing car, in which case, obviously, plaintiff ought at the same time to have seen the coming car and not started across the track. We do not think counsel's idea of the meaning of the verdict is correct.   Taking the finding in connection with that in regard to the dangerous speed of the car, and in connection with the undisputed evidence, it is very clear that what the jury meant was, that if the motorman had been operating his car at a reasonable rate of speed, under the circumstances, he would have seen plaintiff upon the track in time to have checked it and thereby avoided the injury.   In that view, the finding as to the motorman's failure of duty in not seeing respondent is perfectly consistent with the finding of freedom from contributory fault on the part of the latter in failing to observe the car in time to keep out of its way.

To further support the main contention, it is insisted that respondent, as a matter of law, not only should have looked for the coming car from the south on the east track before

he started to cross, but should have seen the car that did the mischief if it was within the line of his vision looking by the front end of the car located at the south crosswalk, and that if it was not, because it had passed out of view within the territory shut out from observation by the stationary car, he should have anticipated the probability of a car being so located and not attempted to cross the tracks until such stationary car moved on; that is, that the rule of law requiring a person to look and listen for a coming car before entering upon a railway track, includes the duty not only to discover what is observable by the senses of seeing and hearing, but the duty to use such senses when and where they will be reasonably certain to discover the existence of a car dangerously near the crossing, if there be one. No fault can be found with the rule, but, applying it to the evidence as a test of plaintiff's conduct, in view of other settled legal principles, we still have difficulty in saying that there was not a fair question of fact left for the jury to solve. The industry of counsel for appellant has not been rewarded by discovering precedents which may be referred to as material aids in solving such difficulty; and our labor to that end has not met with any more satisfactory result. Counsel for respondent has not been more successful. The cases cited to our attention by the latter, the strongest of them being from inferior appellate courts, to the effect that respondent was not bound to wait for all the cars that might be coming to pass by — that he had as much right to use the crossing so as to make defendant check the car to allow him to pass over the tracks as appellant had to delay respondent in order to allow the car to pass over the crossing — are not useful. Such expressions, found in legal opinions to support decisions, do not accurately state the law. They proceed on a misapprehension of the relative rights of street-car companies and ordinary travelers, and have a mischievous effect. Such travelers have only the

Tesch vs. The Milwaukee Electric Railway & Light Co.

common right, while a railroad company has special rights granted to it by the state through the municipality as its agent. The public thoroughfares are under the control of such public agencies, to be used in such reasonable ways as their appropriate governing bodies may determine not inconsistent with the original design. In the exercise of undoubted power, the common council of the city of Milwaukee granted appellant, or some person under whom or corporation under which it claims, the right to maintain and operate its double-track street railroad, and, so far as appears from the evidence, without any restrictions as to the speed of cars or the manner of crossing streets. Such granted rights contemplated rapid transit within reasonable limits, and that ordinary travelers on the street should, to a reasonable extent, shape their conduct with regard thereto. In the use of its granted rights appellant is considered a public agent. It has, impliedly, such privileges as are reasonably necessary to effect the object of its grant. In order that it may enjoy such privileges, ordinary travelers, when upon its track, should give way for the passage of cars and be ready to do so in order not to delay the transit thereof. They ought not to go upon the track if a car is approaching at a lawful rate of speed and reasonable opportunity does not exist to pass over in safety. If the car is approaching at a negligent rate of speed, and the traveler observes it or ought reasonably to do so, such negligence will not justify a traveler in breaching his duty, to exercise ordinary care for his own protection, by placing himself in the way of such car.

The traveler's duty, confining it to a street crossing of a street-car track, is stated by the supreme court of New Jersey substantially in this way: 'The driver of a team in crossing a street-car track has the right of way if, by proceeding at a rate of speed which under the circumstances of time and locality is reasonable, he will reach the place of crossing in time to safely go upon the track in advance of an

approaching car, the latter being sufficiently distant to be checked, and, if need be, stopped, before it will reach him;' that is, if the driver, proceeding reasonably under all the circumstances, enter upon the track, having exercised reasonable judgment as regards the time necessary to stop the car before reaching him, he is not guilty of any breach of ordinary care, even though it shall turn out that he has miscalculated. *N. J. E. R. Co. v. Miller*, 59 N. J. Law, 423. Respondent's counsel relies on that and similar cases. It should be said in passing that the court, in connection with stating the rule as indicated, approved a charge given by the trial court to the effect that a person, in approaching a street-car track for the purpose of crossing the same, where his view is impeded by vehicles or he cannot see up the track, should wait till he reaches a point where his sight is not impeded, before going upon the track; that he ought to be able to see far enough up the track to see that he has the right of way. To that the trial court added this test of when such right of way exists: He has the right of way if he can get upon the track before the car would reach that point if going at a reasonable rate of speed. That was condemned by the appellate court because of two elements: First, that indicating a right on the part of the traveler to get in the way of a coming car by his activity and compel the person in charge thereof to check its speed; second, the right to ignore the actual speed of the car however plainly observable. The true test was given in substance as before indicated, omitting the element permitting the traveler to run a race with a car in order to go upon the track in advance of it, and that permitting him to ignore the unusual rate of speed, but retaining the idea that the traveler need not check his speed to allow a car to pass, but that, traveling at a usual rate, he may go in front of the car, giving time only for the motorman to stop it if need be before reaching the traveler. That is in the nature of an amend-

ment of street-car franchises.   Certainly, such privileges as
are reasonably necessary to the discharge of the duty of a
street-car company to the public in transporting persons
from place to place on the street, in the way in which such
business is ordinarily conducted, are incident to the fran-
chise to maintain and operate the road, in the absence of
municipal regulations or something in the franchise or some
state police regulation to the contrary.   In the absence of
any such regulation, the purpose of such a utility is so in-
consistent with every traveler upon the street where it exists
having the right to go upon the track in advance of a com-
ing car by merely calculating on the time necessary for the
car to be stopped before reaching the crossing, that it is not
perceived how a court can say that such right exists with-
out exercising legislative functions and judicially, in form,
restricting the plain intent of the legislative grant.

The test of the ordinary traveler's right in crossing a
street-car track, to harmonize reasonably with the spirit of
an unrestricted franchise to maintain and operate, as regards
the rights of other users of the way, may properly be stated
thus: A person desiring to cross a street-car track in advance
of an approaching car has the right of way if, calculating
reasonably from the standpoint of a person of ordinary care
and intelligence so circumstanced, he has sufficient time,
proceeding reasonably, to clear the track without interfering
with the movement of the car to and past the point of cross-
ing, assuming that it is moving at a reasonable and lawful
rate of speed.   If a person, exercising his judgment as indi-
cated, attempts to cross the track, and it turns out that he
has miscalculated, he cannot be held guilty of a breach of
duty to exercise ordinary care.   If in the circumstances
stated, other than the speed of the car, the car is approach-
ing at an unlawful rate of speed, and it is observable by the
person about to cross the track, by the exercise of ordinary
care, he must take that into consideration in determining

whether there is time to safely clear the track, the duty to exercise ordinary care for his own protection not being excused by the fault of anybody else.

We are not unmindful of the fact that the rule stated places quite a burden upon the ordinary use of the streets by persons traveling thereon in the ordinary way, especially where there are double tracks with center supporting poles and cars passing both ways at short intervals; but that is one of the incidents of our modern civilization. Everything must move fast. People as a rule will not tolerate anything else. Street-car companies are expected to conform to the public demand in that regard, and are granted franchises, as indicated, in that view. The dangers that result are great and constant. The army of dead and maimed because of such dangers is numerous and being daily added to. But a remedy therefor must not be sought by appealing to courts to change established rules of law in order to indemnify the sufferers; but by appealing to the lawmaking power for such regulations of the construction and operation of street railroads, and the use of streets for such purpose, as will concur with and render such use more in harmony with their safe and convenient use by ordinary travelers, leaving courts to administer justice for wrongs committed notwithstanding, according to the law as they find it.

Now when we apply the test above indicated to respondent's conduct, the difficulty with saying he was guilty of contributory negligence by no means disappears. We must keep in view the peculiar situation he was in when and just before he started to cross the track, in determining whether there was a breach of duty on his part in not discovering the coming car or waiting till he had opportunity therefor. The east track south, looking by the south end of the stationary car, was observable for a distance of probably 100 feet at least; we cannot say further with certainty, in view of the evidence as to the storm that was in progress and

Tesch vs. The Milwaukee Electric Railway & Light Co.

other conditions. The track was observable, looking directly east and southeast, by the north end of the stationary car, for a distance of about forty feet. Between the two parts of observable track there was a space of about sixty feet that was obscured by the standing car. From a point where the car came into view from the south till it passed out of view in the region obscured by the stationary car, at the speed it was moving, it took only about six seconds. As respondent came to a stop on the west side of the street, he saw a car approaching from the south as well as one from the north, and waited for them both to pass. The one from the north passed first. As soon as the one from the south was clear of the crossing, he looked again both ways, and not observing any car approaching from the south, but seeing one coming from the north, a sufficient distance away, however, to enable him to safely cross the tracks, he started. In the time it took for the first car from the south to pass over the crossing, and while respondent was waiting for it to so pass, the six seconds reasonably elapsed necessary for the second car from the south to come into view, pass over the track that was observable to the south, and enter the region of obscurity behind the stationary car, so that when respondent looked before starting to make the crossing there was no moving car in view, south. He made the start supposing that it was safe to do so.

There was no breach of duty to look both ways and listen. Was it, as a matter of law, want of ordinary care on the part of respondent not to have anticipated the probability of a car being obscured from his sight within the sixty feet of space he could not see by reason of the stationary car? It seems that the term "probability" should be changed to "possibility" in view of the verity in the case that the car was going at an unusual rate of speed, so that it came into and passed out of sight in a few seconds of time. That would be placing the standard of ordinary care, which one must

exercise as a matter of law, higher, as it seems, than any established rule of law with which we are familiar will permit, or any precedent, that has been cited to our attention or that we have been able to discover, will justify. If the track had been obscured from the region of the crossing south for substantially all of the way within which an approaching car could otherwise have been seen and would have been, as a matter of law, dangerously near as regards plaintiff's crossing the track, the situation would be far different. It was to such a circumstance, among others, that the attention of the court was directed in *N. J. E. R. Co. v. Miller*, 59 N. J. Law, 423. The same is true of *Langhoff v. M. & P. du C. R. Co.* 19 Wis. 489. There two trains were approaching on parallel tracks and substantially side by side, one of the trains being obscured from view by the other, and the track on which it was moving, except from the crossing to about the head of the observable train, was all out of view; yet the court held that the plaintiff was not guilty of want of ordinary care in not anticipating the probability of there being a second train obscured from the injured person's point of observation by the one that was in sight. The situation was similar, on principle, in *Newark P. R. Co. v. Block*, 45 N. J. Law, 605; *Oleson v. L. S. & M. S. R. Co.* 143 Ind. 405; *Hovenden v. Pa. R. Co.* 180 Pa. St. 244; and other cases cited by appellant's counsel, and many others to be found in the books. They are analogous to *Johnson v. Superior R. T. R. Co.* 91 Wis. 233, where the railway track, except at the crossing and the immediate vicinity thereof, was obscured from view by the curtains of the driver's vehicle.

There is nothing in what has been said, nor the conclusion here reached, militating against the rule that a person, approaching a railway track with a view of entering upon it, must look both ways and listen, and that the performance of that duty is not excused by negligence on the part of the

Tesch vs. The Milwaukee Electric Railway & Light Co.

railway company, and that the duty to look and listen includes that of performing such duty when and where it will be reasonably certain to effect its purpose, as laid down by standard text-writers, numerous decisions of this court, and most of the courts elsewhere.    Elliott, R. R. § 1166; *Cawley v. La Crosse City R. Co.* 101 Wis. 145; *Oleson v. L. S. & M. S. R. Co.* 143 Ind. 405.    This decision goes no further than that, under the circumstances of this case,— the most significant being that a car had just passed by on the east track, that the entire track within which an approaching car would have been dangerously near was in view except a small space thereof over which a car going at the speed of the one in question would pass in four seconds, and that no signal of the presence of the car was given,— it is susceptible at least of a reasonable inference that the attempt to cross the track on the theory that a car was not hidden from view in such short space, was not inconsistent with ordinary care.    That raised this question of fact: What was the proper inference to be drawn?   It was the province of the jury to solve that question.   Every principle of law bearing on the case seems consistent with this conclusion, and all light obtainable from precedents is consistent as well.

*By the Court.*— The judgment of the superior court is affirmed.

BARDEEN, J., took no part.