HANLON, Respondent, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Appellant.

*May 9—May 29, 1903.*

*Street railways: Negligence: Personal injuries: Contributory negligence: Injuries to driver of fire apparatus: Due care: Collision at street crossing: Instructions to jury: Evidence: Witnesses: Cross-examination: Excessive damages.*

1. In an action for personal injuries to the driver of a hose cart it appeared, among other things, that plaintiff, driving rapidly in response to an alarm of fire, and in the line of his duties as fireman, came into collision with defendant's street car. There was evidence that the car was traveling at a speed of twenty to twenty-five miles an hour, and that nothing was done to check that speed until within twenty feet of collision, although plaintiff's team was in plain sight when the car was 100 feet from the crossing. *Held,* that it was inferable that the motorman neglected to keep any lookout ahead during a run of some eighty feet of approach, and a finding that defendant's servant negligently operated its car was justified.

Hanlon v. Milwaukee E. R. & L. Co. 118 Wis. 210.

2. In such case, it further appeared that plaintiff's horses, although on a run, were under perfect control, and might have been stopped before collision; that there was no failure on plaintiff's part to look, and no failure to see that which was physically apparent; that to serve the public purpose of his employment it was plaintiff's duty to seize every opportunity to make expedition, and take chances, in deference to the imperative necessity for speed, which would be wholly unjustifiable otherwise; that the gong on the hose cart was constantly sounded, justifying, in a considerable measure, confidence that crossings and corners would be clear when reached, and that it was undisputed that a uniform custom existed for the operators of street cars to give fire vehicles right of way, and slow down and stop to avoid collision. *Held*, that although it might have been negligence in law for a traveler under ordinary conditions to have taken the chance of crossing ahead of the car, still the circumstances surrounding plaintiff so differed, that whether plaintiff was guilty of contributory negligence in attempting to cross ahead of the approaching car, was properly a question for the jury.

3. In such case, it appearing that although the plaintiff's team was running, yet it was under perfect control, it is not error to refuse instructions to the jury, based on the assumption that plaintiff approached the crossing at such uncontrollable speed that he could not stop to avoid a collision.

4. In such case, a requested instruction, that the jury might absolutely find plaintiff guilty of contributory negligence, if they found there was such uncontrollable speed, is incorrect.

5. A requested instruction, in effect, that one approaching a street railway track, and having a reasonable opportunity to judge of the speed of an approaching car, is bound to know such speed, while it may state correctly an abstract rule of law applicable to ordinary circumstances, is misleading, where it appeared that as to fire vehicles there was a uniform custom of operators of cars to change their speed, either by slowing up or stopping, in order to give opportunity for such vehicles to pass.

6. Such instruction is further erroneous and misleading in that it requires every man "having a reasonable opportunity to judge" that he judge correctly, and "know" the correct speed. He must observe what is perceptible and must reach the conclusion of an ordinary man, and not the infallible one. Beyond this the law does not charge him with knowledge.

7. A requested instruction, to the effect, that one approaching a car track must, in the exercise of ordinary care, look and listen

for an approaching car, and continue so to look and listen up to the last moment that such acts would be of any virtue in preventing a collision with a car, has no application to a case where the evidence establishes, without controversy, that plaintiff did look and see and know all that could have been ascertained by the utmost vigilance.

8. Such instruction is, however, faulty in that it lacks the qualification that one must look and listen *if he have opportunity so to do.*

9. In instructions to the jury the expressions "the great mass or majority of mankind," and its type, "the man of ordinary care and prudence," are entire equivalents, and properly used interchangeably.

10. In an action for injuries to the driver of a hose cart, en route to a fire, by collision with a street car, it was undisputed that it was the uniform custom of street cars to stop or slacken speed, and give fire apparatus the right of way. *Held,* that it was not error to instruct the jury that, inasmuch as such custom had been established beyond controversy, plaintiff had a right to assume that defendant's servants would comply therewith.

11. In an action for injuries to the driver of a hose cart in collision with a street car, evidence of a witness, that sitting on a sidewalk he had frequently heard the gong of the fire patrol wagon, described as similar to the gong on the hose cart, a distance of two blocks, is not objectionable on the ground that the conditions surrounding the witness were not identical with those surrounding the motorman.

12. In an action for injuries by collision with a street car, the speed of the car was estimated at varying rates up to twenty-five miles an hour. The motorman had testified on direct examination that the speed was only seven or eight miles an hour; that the ninth notch of the power lever was the ultimate speed of the car, and that he had it at the eighth. *Held,* that it was not error to permit, on cross-examination, the question whether or not the car in question was not a specially rapid one, to which the motorman answered that, while not the most rapid, there were only two others that excelled it.

13. Plaintiff, a fireman, thirty-seven years of age, who had been in the fire department nine years, and had attained the rank of captain, with a salary of $100 per month, was injured in a collision with a street car. His knee joint was permanently loosened and enfeebled, and his chest crushed, ribs being broken both in front and rear, penetrating not only the outer membrane, but the pericardium, leaving adhesions which would

permanently and seriously interfere with any violent exertions. His expenses for medical treatment had been about $500. His sufferings had been great and he still continued to suffer two years after the injury. He retained his place in the fire department, but was unable to perform certain of the work necessary in fighting fires. *Held:*

(1) That the jury might properly find that his earning capacity was impaired.

(2) That a verdict of $4,000 was not excessive.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Affirmed.*

The plaintiff, on October 17, 1900, was, and had been for a considerable time, a member of the fire department of Milwaukee. On that day, in response to an alarm of fire, and in performance of his duty, he proceeded to drive his hose wagon southward on Sixteenth street and across Vliet street, rapidly, as usual, some seven or eight miles an hour, sounding the rotary gong thereon, which, according to the evidence, was audible at a distance from two to eight blocks away. When he reached the north side of Vliet street, he discovered defendant's street car at a distance variously stated up to 100 feet east of the crossing, headed westward. It had been a uniform custom in Milwaukee for many years for the street cars to slacken or stop so as to give right of way to the fire department vehicles. Plaintiff assumed that the car would so stop, urged forward his galloping horses, but, as he got within a few feet of the track, saw that the car had not stopped nor slowed up, and attempted to swerve his horses westward, but was too near to turn without coming upon the track, and a violent collision occurred, throwing him to the ground and causing him injuries. There was evidence that the speed of the car was from eight to twenty-five miles an hour, and did not at all diminish up to the time of the collision, although the motorman claims to have immediately, upon seeing the hose cart, attempted to stop his car. By a

special verdict the jury found that at and prior to the collision the car was running at a greater speed than was consistent with ordinary care, which was the proximate cause of the injury, and that the defendant was guilty of want of ordinary care, which was the proximate cause of the injury; that the hose cart was not being driven at a negligent speed; and that the plaintiff was guilty of no want of ordinary care which contributed to the injury; and that the damages were $4,000. Defendant moved for direction of a verdict, and after verdict moved to strike out and reverse the answers to the questions inquiring as to the negligent speed of the hose cart and the negligence of the plaintiff, and for judgment in its favor upon such amended verdict. Defendant also moved for a new trial. All of said motions were overruled, and judgment for the plaintiff entered, from which the defendant appeals.

For the appellant there was a brief by *Spooner & Rosecrantz,* and oral argument by *C. N. Rosecrantz.*

For the respondent there was a brief by *Dorr & Gregory,* and oral argument by *T. H. Dorr.*

DODGE, J. The finding that the defendant's servant negligently operated its car is not seriously controverted. In its support there was evidence of extraordinary speed—twenty to twenty-five miles per hour—and that nothing was done to check that speed till within some twenty feet of collision, although the plaintiff's team was in plain sight when the car was 100 feet from the crossing, and although his gong had been regularly sounded for several blocks. Indeed, it is inferable that the motorman neglected to keep any lookout ahead during a run of some eighty feet of approach to the crossing, for he failed to see plaintiff's team and vehicle until close to them. The chief contention is that plaintiff's conduct, as conceded or conclusively established, constituted contributory negligence.

The primary question argued is whether facts and circumstances surrounding the plaintiff at the time of and just before his injuries varied so radically from those surrounding the ordinary traveler that what would have been negligence in the latter *per se* as matter of law might by reasonable minds be deemed consistent with the care to be expected of the ordinarily prudent man under such circumstances as are shown in this record. That the same acts may be either careful or negligent according to the variant circumstances is elementary. *Boelter v. Ross L. Co.* 103 Wis. 324, 330, 79 N. W. 243; *Warden v. Miller,* 112 Wis. 67, 87 N. W. 828; *Yerkes v. N. P. R. Co.* 112 Wis. 184, 193, 88 N. W. 33. This court, in common with many, if not most, others of last resort, has declared that certain acts are so obviously and notoriously variant from the conduct of persons of ordinary prudence at railway crossings under all ordinary circumstances that reasonable minds cannot honestly differ as to whether they are negligence; hence that they must be so held as matter of law. Among these are the omission to look and listen for an approaching car when the opportunity to do so exists; also the needless attempt to make the crossing ahead of the car or engine with knowledge of its approach in such proximity and at such speed as to make the attempt dangerous. *Koester v. C. & N. W. R. Co.* 106 Wis. 460, 465, 82 N. W. 295; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823; *Watermolen v. Fox River E. R. & P. Co.* 110 Wis. 153, 156, 85 N. W. 663; *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 346, 85 N. W. 1036. In the last case it is declared negligence to attempt to cross when collision is probable, unless the speed of the car be greatly slackened. In this connection it is also settled in *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 608, 84 N. W. 823, that the ordinary traveler is not necessarily negligent if, calculating reasonably, he has time to cross safely without interfering with the movement of the car, assuming it is moving at a reasonable rate of speed

or at the higher actual rate, if known to him. This conclusion was reached as a corollary of the proposition that, as between the general traveling public and the street car, the former have neither right to interrupt the latter's course to enable them to cross, nor reason to expect that the operator will so manage the car as to give them opportunity, for cars are not usually so managed, and cannot be consistently with the duty of rapid transportation which they serve. Another consideration, written into several of the above cases, which has been forceful in leading to conclusion of negligence from an attempt to make the crossing in a doubtful case, is the very slight measure of inconvenience to the ordinary traveler in pausing to give the car way, as compared with the peril of attempting the crossing.

In the light of the principles and rules of law thus established, let us consider whether the circumstances surrounding plaintiff were such that they might legally differentiate the situation from the ordinary one as to the conduct reasonably to be expected from the man of ordinary prudence. We must first eliminate one asserted element of conduct which is made the basis of much of appellant's argument in supporting both his claim for a directed verdict and certain requested instructions; that is, that plaintiff approached Vliet street at such speed, and with his horses so beyond control, that he could not have stopped to avoid collision, although the car had been on the crossing without negligence of the motorman. We do not find it necessary to decide whether such conduct would constitute negligence, for we find no proof of it. The evidence is without dispute that, although driving rapidly, with horses on a run, as his duty required, plaintiff still had them under perfect control, and had already checked them so that he might have stopped at the time when he sighted the car, ninety to 100 feet away, when he decided that he had sufficient time to cross ahead of it. Again, there was no failure of the duty to look, and no failure to see that

which was physically apparent. At the moment that he reached the building line on the north side of Vliet street he looked, and saw this car. Hence the question is whether an irresistible and indubitable inference of negligence arises from the fact that he gave head to his horses, and attempted to make the crossing. Among those things which distinguish the conduct of the driver of fire apparatus from others is, primarily, the duty and necessity of great speed. The loss of moments may mean destruction of lives or property. The public purpose which such men and appliances serve would be defeated by the hesitation and caution which does and should characterize the ordinary traveler. To serve this public purpose, the driver must and does seize every opportunity to make expedition. He takes chances, in deference to the imperative necessity for speed, which would be wholly unjustifiable otherwise. These things firemen do. These things they must do. The conclusion seems irresistible, either that they are consistent with ordinary care under those circumstances, or that the ordinarily prudent man cannot hold a position in the fire department. Another distinguishing circumstance is the persistent alarm which precedes the fire vehicle. The clamor of its gong is a penetrating, far-reaching sound, so entirely distinct from the other sounds of a city street as to force attention at once. That circumstance, of course, greatly diminishes the hazard resulting from the speed, as it serves to clear the way of obstacles, and justifies a considerable measure of confidence that crossings and corners will be clear when reached. Another and most important distinction, certainly as applied to plaintiff's conduct, is the undisputed and uniform custom of the operators of street cars to give the fire vehicles right of way, and to slow down and stop to avoid collision. This is just what the ordinary traveler has no justification in expecting. His duty, as pointed out in the *Tesch* and *Stafford Cases,* is to govern his conduct upon the expectation that the car will continue at

the speed at which it is traveling when he observes it.   The ordinarily prudent man acts in the light of his experience of what is customary and usual.   If the uniform custom were to hold cars back from a crossing to enable him to pass over, he would probably deem it safe to proceed when he believed that his approach was seen by the motorman, and the car was far enough away to permit the usual efforts to have effect. As that is not usual, a contrary rule of conduct is and must be observed by the ordinarily prudent traveler.   On the other hand, it is held to be consistent with due care for the motorman under such circumstances to approach crossings, even at such speed that he may be unable to avert collision with passers, merely because he has a right, based on experience, to expect that travelers will not come in his way when his car is in sight and his gong sounded to warn them. We are of opinion that it is not beyond reason for a jury to conclude that the plaintiff, after having given warning of his approach by such clamor of his gong that it was heard by people shut up in houses while he was still a block or more away, and when he drove out from Sixteenth street into plain sight of the motorman ninety feet away, might have believed reasonably that his presence was known, and might reasonably have expected that the usual and customary efforts to keep the car back from collision would be made.   If that had been done, there is no pretense but the wagon could have passed in safety; hence a decision to make the attempt would not have been unreasonable.   In other words, we hold that, although it might have been negligence in law for a traveler under ordinary conditions to have taken the chance of crossing ahead of a car in the proximity and at the speed of this one, still the circumstances surrounding plaintiff so differed that reasonable minds might consider the same attempt by him within the bounds of due care; hence that the question was one properly for the jury.

Only four decided cases with reference to street-crossing

collisions with fire-department vehicles have been brought
to our notice. Of these *Warren v. Mendenhall,* 77 Minn.
145, 79 N. W. 661, and *Decker v. Brooklyn Heights R. Co.*
72 N. Y. Supp. 229, hold squarely that the circumstances
surrounding the drivers are marked by material distinctions
from those around other travelers, and that what would be
negligence *per se* in the latter may well be open to a con-
trary conclusion in the case of the former. They fully sup-
port our view as above stated. On the other hand are urged
upon us by the appellant *Greenwood v. P. W. & B. R. Co.*
124 Pa. St. 572, 17 Atl. 188, and *Garrity v. Detroit C. St.*
*R. Co.* 112 Mich. 369, 70 N. W. 1018. In the former of
these the collision was with a steam railway train, where, of
course, neither could the fireman's gong give any warning,
nor was there any custom, nor, indeed, possibility, that the
train should be slowed down or stopped after the wagon was
in sight. The court held that the mere necessity for speed
was not sufficient to absolve the driver from a duty to look
for an approaching train, when, as there, he had full and
practical opportunity to do so. In the *Michigan case* it was
said to be against public policy, and therefore negligence
*per se,* to drive through city streets at such speed as to make
evasion of obstacles at crossings impossible; but the case was
held to have been properly one for the jury, because it was
within reasonable judgment and prudence to attempt to cross
ahead of a car 100 to 150 feet away when the driver first
sighted it—a holding that would support the view that plaint-
iff's negligence was properly a jury question in this case.
In *Magee v. West End St. R. Co.* 151 Mass. 240, 23 N. E.
1102, the court holds that the duty of haste resting on a fire-
man constitutes a distinguishing circumstance which might
warrant a finding of due care in his case, though not in case
of one not in such exigency. This was applied to plaintiff's
manner of riding on a truck while adjusting his equipments.
In *Flynn v. Louisville R. Co.* (Ky.) 62 S. W. 490, the court

expresses views generally in recognition of sufficiency of the
necessity for speed and existence of right of way over cars
to exculpate a driver of a salvage wagon attempting the
crossing, but the case turned upon the supervening negligence
of the motorman, and the question of contributory negligence
in plaintiff was not authoritatively decided.   The result of
these decided cases from other courts is to confirm the view
already expressed that the question whether, under all the
circumstances, plaintiff was guilty of contributory negligence
in attempting to cross Vliet street ahead of the approaching
car, was properly for the jury.

Error is assigned upon the refusal to give certain in-
structions, both with reference to defendant's negligence and
plaintiff's contributory negligence, based upon an assump-
tion that the jury might have found from the evidence that
plaintiff approached Vliet street with his horses at such
uncontrollable speed that he could not stop to avoid a col-
lision.   We have already stated that such an assumption has
no support in the record.   There is no evidence of any such
condition of things.   Further, the instructions requested
with reference to the question of contributory negligence
were incorrect, in that they required the jury absolutely to
answer such questions in the affirmative if they found that
there was such uncontrolled speed.   As pointed out in *Gar-
rity v. Detroit C. St. R. Co.*, on which appellant seems to
rely, such speed might or might not have been contributory
negligence.   It might or might not have contributed to the
collision; for if, when plaintiff reached Vliet street, and saw
the car, it was consistent with ordinary care under all the
circumstances for him to decide that it was safe to cross
ahead of it, then the attempt so to do might not be negligence,
although the event did not justify it (*Tesch v. Milwaukee
E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823); especially if,
as the evidence tended to prove, the collision was due to con-
duct on the part of the motorman such as an ordinarily pru-

dent person, driving a fire vehicle, would not have antici-
pated.    In such case the antecedent rapidity of approach
would have no causal connection with the collision.    No error
was committed in refusing these requests.

Another instruction was requested to the effect that one
approaching a street railroad track, and "having a reasonable
opportunity to judge of the speed of an approaching car, is
bound to know such speed, and cannot assume that it is run-
ning at a speed consistent with ordinary care and proceed
upon that assumption."    Assuming that this instruction cor-
rectly states an abstract rule of law applicable to ordinary
circumstances, it would be highly misleading in a case of this
sort, where there were additional circumstances naturally
affecting the driver's conduct; most prominent among them
the custom of operators of cars to change their speed, either
by slowing up or stopping, in order to give opportunity for
the fire vehicle to pass.    The man who has a right, in the ex-
ercise of ordinary prudence, to assume that such efforts will
be made and be effective, is not necessarily negligent because
he attempted to pass in front of a car, although it would be
likely to collide with him if it continued at its known speed.
As is said in the *Tesch Case,* the ordinary traveler has no
right, in the exercise of a reasonable prudence, to indulge
such expectation; but the driver of a fire department vehicle
has, if he has reason to believe that his presence is known to
the motorman.    This instruction is, however, erroneous and
misleading in another respect.    It requires of every man
"having a reasonable opportunity to judge" that he judge
correctly, and "know" the correct speed.    This goes beyond
any authority in this or other courts.    He is obliged to know
that which the ordinarily prudent and intelligent man would
know under the circumstances.    Having, as the court said,
reasonable opportunity to judge, he must reach the conclu-
sion of the ordinary man, and not the infallible one.    These
suggestions are especially applicable to one who gets but a

glance of a car or train approaching him nearly head on, for he is not at all well situated to observe accurately the speed. He must observe what is perceptible, but beyond this the law does not charge him with knowledge.

Another request for instruction was to the effect that one approaching a car track "must, in the exercise of ordinary care, look and listen for an approaching car, and continue so to look and listen up to the last moment that such acts would be of any virtue in preventing a collision with a car." Conceding that this is a correct abstract rule, as in most of its language it is, yet it has no application to the present case, for the evidence establishes without controversy that the plaintiff did look and see and know all that could have been ascertained by the utmost vigilance. The instruction is, however, faulty, and faulty in a respect relevant to the situation here. It lacks the qualification that one must look and listen *if he have opportunity so to do*. There is possibility, especially with one managing a team and vehicle, that his continued observation of the track in either direction may be at least morally impossible; that his attention may be not diverted, as has been incorrectly said in one or two cases, but absolutely forced away from watchfulness. For example, in this case it was just as essential to plaintiff's due care that he should look westward for an approaching car as that he should look eastward, and the only intimation in the evidence of any diversion of his attention from the car which struck him was for the purpose of the exercise of this duty. If this instruction required him, from the moment he was in position to see up or down Vliet street, to keep his eyes fastened on this particular car, and to govern his conduct without informing himself as to the condition of things in the other direction, it of course contains its own refutation, for that would necessarily be negligence. The possibility of the forcing away of one's attention as an excuse for continued watchfulness is discussed in *Guhl v. Whitcomb,* 109 Wis. 69, 74,

85 N. W. 142, where the previous cases were collected, and where it was pointed out that no ordinary or trifling circumstance could justify diversion or withdrawal of attention; yet, where the circumstances so forced it away, it might be well held that a plaintiff had not the opportunity to look or listen.

Error is predicated upon the charge given in the following words:

"By ordinary care is meant such care as a man of ordinary care and prudence would have exercised under circumstances like to those disclosed by the testimony in this case."

The criticism seems to be that the charge would have suited appellant's taste better had the expression "the great mass or majority of mankind" been used instead of "a man of ordinary prudence." The instruction assailed is strictly accurate. It seems that we ought by this time to be absolved from the necessity of repeating that the two expressions, "the great mass or majority of mankind," and its type, "the man of ordinary care and prudence," are entire equivalents, and properly used interchangeably. *Yerkes v. N. P. R. Co.* 112 Wis. 184, 193, 88 N. W. 33.

Another instruction complained of is to the effect that, it having been established beyond controversy that the custom was uniform for the street cars to stop or slacken speed, so as to permit fire apparatus to cross the streets when their approach was known, the plaintiff had a right to assume that the defendant's servants would so conduct themselves, if they knew, or, in the exercise of ordinary care ought to have known, of his vehicle's approach. The complaint seems to be that the court told the jury that this custom was established by undisputed evidence. It certainly was, and in so stating we can discover no error. The same is true of the fact that plaintiff was responding to a fire alarm. In these respects we cannot concur with the appellant's criticism. That the right to make such assumption exists certainly has

support from *Watermolen v. Fox River E. R. & P. Co.* 110 Wis., at page 159, 85 N. W. 663, *Stafford v. Chippewa Valley E. R. Co.* 110 Wis., at page 361, 85 N. W. 1036, and other cases which declare that the motorman of a street car has a right to assume that persons approaching a street crossing will exercise the usual and customary precautions, and may operate his car accordingly without guilt of negligence.

Error is assigned upon permitting a witness to testify that, sitting on a sidewalk, he had frequently heard the gong of the fire patrol wagon, which was described as similar to the gong on the plaintiff's wagon, at a distance of two blocks. The complaint seems to be that the conditions surrounding the witness were not identical with those surrounding the motorman. This, of course, is true, but we do not think it rendered the evidence inadmissible. It was a circumstance bearing upon its weight. The record is full of testimony, given without objection, from witnesses who heard the gong of this vehicle at varying distances and under varying circumstances of opportunity. It would be far too restrictive a rule that, in order to give the jury benefit of experience as to the effect of such gongs in giving distant warning, the witness must have been in exactly the same situation as the person claimed to have been warned on the particular occasion. All of the circumstances surrounding each witness being before the jury, the inference as to the efficacy of the sound became a question of fact for them to resolve as reasonably intelligent men.

Further error is assigned upon permitting cross-examination of the motorman as to whether the car in question was not a specially rapid one; he finally stated that, while not the most rapid, there were only two others which excelled it. The situation at the time this testimony was taken was that several witnesses had described the speed of the car at varying rates up to twenty-five miles an hour. The motorman himself had testified that he had his power lever thrown open

to the second highest notch; that the ninth notch was the ultimate speed of the car, and that he had it at the eighth notch.   In this situation, the ability of the car to make great speed was certainly a legitimate fact to be drawn out in testing the accuracy of this same witness, who had claimed that his speed was only seven or eight miles an hour.   No error was committed in permitting him to be so cross-examined.

The damages are assailed as excessive, and in that connection complaint is made of an instruction which permitted the jury to consider plaintiff's loss of earning capacity for the future.   The plaintiff was thirty-seven years old, had been in the fire department some nine years, and attained the rank of captain, with a salary of $100 per month.   The injuries suffered were a permanently loosened and enfeebled knee joint, the crushing in of the chest, ribs being broken both in front and rear and penetrating not only the outer membrane, but the pericardium itself, leaving adhesions between these membranes which the physicians declared were certain to be permanent, and to interfere seriously with any violent exertions, while suffering might not be great in the case of moderate exertions.   His expenses of cure had been about $500.   His sufferings had been great, and had continued in some degree up to the time of the trial, two years after the injury.   He still occupied his place in the fire department, but found it extremely difficult, by reason of his injuries, to perform certain of the work necessary in fighting fires.   In this situation it is impossible to say that there was no evidence from which the jury might have found his earning capacity was impaired.   His profession, in which he had attained high standing and high compensation, called for extreme physical vigor.   He could not hope to progress, nor, probably, to retain his then position permanently, with the impairment which the evidence tended to disclose.   At least the jury might legitimately have drawn such inference. . Of course, they had the advantage of opportunity to observe the

man himself upon the stand before them. In view of all these considerations, we feel unable to say that the damages exceed what the jury might have believed proper compensation for all the injuries suffered, without passion or prejudice, and cannot, therefore, hold that error was committed by the trial court in ordering judgment for the amount so found.

We find no error which should reverse the judgment.

*By the Court.*—Judgment affirmed.