# JOHN BODIN v. DULUTH STREET RAILWAY COMPANY.[1]

May 24, 1912.

Nos. 17,549—(112).

**Negligence of pedestrian — question for jury.**

Where it appears that a pedestrian, about to cross street railway tracks at a regular street crossing, looked twice after he left the curb toward the approaching car, but the night was dark, the speed of the car was unusually high, the noise on the rails as then laid not great, the headlight on the car was smaller and dimmer than ordinarily used on the cars there operated, the street was being paved with paving stones, and débris scattered around, the rails being raised six or seven inches from the concrete base, then partly laid, requiring attention to avoid the obstructions, it becomes a question for the jury whether such pedestrian, after he so looked and saw the car, was justified, in the exercise of ordinary care, to conclude that he could cross the track in safety.

**Verdict sustained by evidence.**

The finding that defendant ran the car at a negligently high speed and failed to give the usual warning of its approach is sustained by the evidence.

**Damages not excessive.**

Where the only next of kin was decedent's mother, sixty-seven years old, and to whose support he had regularly contributed for the last three years, *held*, that $2,000 damages for his death was not excessive.

Action by the administrator of the estate of Carl Upstrom, deceased, to recover $5,000 for the death of his intestate. The answer alleged that the accident was due to the negligence of deceased. The reply was a general denial. The case was tried before Hughes, J., and a jury which returned a verdict in favor of plaintiff for $4,000. Defendant's alternative motion for judgment was denied, and that for a new trial was granted, unless plaintiff consented to a reduction of the verdict to $2,000. Plaintiff consented. From the order denying judgment notwithstanding the verdict or for a new trial, defendant appealed. Affirmed.

[1] Reported in 136 N. W. 302.
    117 M.—33. .

*Thomas S. Wood,* for appellant.
*Andrew Nelson* and *George B. Sjoselius,* for respondent.

HOLT, J.

The action is for injuries resulting in the death of plaintiff's intestate through the alleged negligence of the defendant. The trial resulted in a verdict of $4,000. The defendant's motion for judgment notwithstanding the verdict was denied; also the alternative motion for a new trial, if plaintiff remitted $2,000 from the verdict. Plaintiff remitted, and defendant appeals.

The defendant is a street railway company operating by electric power a line, among others, between Duluth and West Superior upon a street called Garfield avenue. The north-bound track of the line is east of the center of the street, and the south-bound on the west thereof. At about 10:30 o'clock on the night of September 12, 1910, a car of the defendant running north collided with Carl Upstrom, plaintiff's intestate, inflicting injuries resulting in death the next day. The testimony tended to show that the night was dark and cloudy; one witness claiming it was somewhat foggy. The usual street light was not burning. The street was being paved with sandstone blocks, laid on a concrete base. The testimony is somewhat obscure as to whether the paving of Garfield avenue was completed further than to the east rail of the southbound track. At any rate, all of the avenue east of the west rail of the northbound track had only the base. The rails were six or seven inches higher than the concrete. The testimony also tended to show that there were sandstone blocks and débris between the tracks and rails. Where the accident occurred is a short cross street, called Six Hundred. The collision took place on the north crossing of this street.

Upstrom and a companion, since deceased, immediately before the accident, came out of the boarding house where they lived, at the north-west corner made by the intersection of the street Six Hundred with Garfield avenue, and were observed by a witness, who stood on the sidewalk at the northeast corner. This witness testified that he heard Upstrom and his companion, when they were about

three feet east of the west curb of the avenue, talk about whether the car then approaching from the south on the north-bound track was so far away that they could safely cross, and that they looked toward the car, one observing that there was ample time; Upstrom saying to his companion, Anderson, as he pointed to the coming car, "There is one of them coming away down there," and Anderson, responding, said: "We can make that one easy; it is so far away." They then walked right across, or, perhaps, a little slanting, since they started a few feet north of the north crossing. This witness also states that he observed that Upstrom, who was about three feet in the lead, again looked toward the car when about nine feet from the track, walking from the time he started at a steady, brisk gait. When Upstrom looked the first time, the car appeared to this witness to be a block and a half away, and when the second time about half a block. Upstrom was struck, this witness says, when he was stepping over the west rail. The deceased was thrown a few feet forward and away from the car, and the car was stopped, so that the rear vestibule was about eighteen feet further north than the body; the car having traveled some sixty-eight feet after the collision. There was also testimony tending to show that the rails were new and dry, and that not much noise was made by the car in coming; that the headlight was not one of the ordinary ones used on cars traveling there, but one of smaller size and power; and, further, that the car was run at a speed of over twenty miles per hour without slacking up for crossings. The avenue was straight for about a mile towards the south, and all the way closely built; the buildings extending to the sidewalk.

We have set out the evidence tending most strongly to show that the deceased was not guilty of negligence, because; the jury having found that he was not, and this finding having been approved by the trial court, this court must consider the evidence in the most favorable aspect, so far as Upstrom's freedom from contributory negligence is concerned. While it is the settled law in this state that a person crossing a street railway at a street crossing is not required to use the same degree of care as one crossing the ordinary

steam railway, still it is held that a person about to cross a street railway track must use his senses to discover if a car be in dangerous proximity. To fail to look, or to heedlessly proceed when the look discloses the danger, is negligence which defeats recovery. Either is manifest negligence where no excuse appears for failure to look, or for not acting on the information imparted by the sense.

In this case, the testimony disclosed that the deceased did look, and was aware of the approach of the car. It thus narrows down to this proposition: Would the ordinary prudent person in Upstrom's situation, by the information obtained by his senses of sight and hearing, have come to the conclusion that the crossing could not be made with safety? We may concede that if it had been daylight the inference would be irresistible that it would have been negligence to attempt the crossing under the circumstances. One can judge of the speed of an approaching object in daylight with some degree of exactness; but it is very difficult, if not impossible, so to do in the dark, when the only thing visible of the moving object is a headlight.

Defendant contends that this case is an exact counterpart of Metz v. St. Paul City Ry. Co. 88 Minn. 48, 92 N. W. 502. But we note that Metz, on a clear, still night, only looked once when he stepped off the curb; there was no obstruction in the street; he could have had his eyes on the approaching car all the time.

In the instant case, the testimony tends to show that the deceased looked twice after he was three feet from the curb; that the street was torn up, so that some attention was necessary to see where he stepped; that the noise made by the car on the rails as then laid was not great; that the speed was greatly in excess of the usual; that the night was dark, the street poorly lighted, and the headlight smaller than the one ordinarily in use. All these considerations, we think, make it a question of fact for the jury to say if the conduct of the deceased, in attempting the crossing, was negligence. The deceased had the right to assume, until informed to the contrary by such observation as a prudent person could then have made, that the car was running at the ordinary speed, and under the or-

dinary rules, which require the motorman to have the car within control on passing over crossings where he may anticipate, not only that people are using the crossings, but that he may be required to stop for passengers. As stated in Bremer v. St. Paul City Ry. Co. 107 Minn. 326, 120 N. W. 382, 21 L.R.A. (N.S.) 887: "The pedestrian's duty is to be considered in connection with his justified presumption that the street car company, having no priority of way, will be careful, especially at a crossing."

And, again, in O'Brien v. St. Paul City Ry. Co. 98 Minn. 205, 207, 108 N. W. 805, it is said:

"It is the settled law that it is the duty of a street car company to keep its cars under reasonable control, and to run them at a reasonable rate of speed, when they are near street crossings in crowded parts of a city; that it is not negligence in law to cross a street railway track in front of an approaching car which a person using the highway has seen, and which does not appear to him to be dangerously near, and which would not have been so in fact, had it been running at its ordinary rate of speed and under proper control; and that such a person is not bound to anticipate that the motoneer would be negligent, reckless, or wilful."

So to the same effect in Albee v. Boston, 209 Mass. 6, 95 N. E. 110; Deitring v. St. Louis, 109 Mo. App. 524, 85 S. W. 140; Consolidated v. Glynn, 59 N. J. L. 432, 37 Atl. 66; Tesch v. Electric, 108 Wis. 593, 84 N. W. 823, 53 L.R.A. 618; Saunders v. City, 99 Tenn. 130, 41 S. W. 130.

The cases cited by appellant, to the effect that the motorman has a right to assume that a pedestrian, about to cross the track in front of the approaching car, will exercise due care, state propositions of well established law; also the cases holding that it is negligence to fail to use one's senses, or where it is clear that the information gained by the use of the senses was heedlessly disregarded. But such is not the case at bar, if the jury believed, as it had a right to do, the testimony most favorable to plaintiff's contention that Upstrom was using ordinary care in attempting to make the crossing.

No argument in appellant's brief is presented on the error assigned that defendant's negligence was not proven. It is sufficient to say that, both as to speed and absence of warning, the evidence amply sustains the finding of such negligence. The issues, both as to defendant's negligence and plaintiff's contributory negligence, were clearly and with great impartiality submitted to the jury; and their findings thereon having been approved by the trial court, we find no legal cause to disturb them.

Error is assigned on the amount of damages as reduced, on the claim that they are excessive. The only argument presented is this: "The damages were clearly excessive, even as reduced. Plaintiff's intestate had only contributed, all told, a sum less than a hundred dollars to the support of his mother." Plaintiff's intestate was forty-eight years old, industrious, strong and healthy. His mother was sixty-seven years old, with a life expectancy of over ten years. It was shown that each year for three years before his death he had sent her money, the last in July, 1910, $40.35. His stepbrother testified to knowledge of these three remittances. Whether he had sent other moneys when such stepbrother was not present does not appear. In the following cases, Thomas v. Chicago Great Western R. Co. 112 Minn. 360, 128 N. W. 297; Holden v. Great Northern Ry Co. 103 Minn. 98, 114 N. W. 365, and Bremer v. Minneapolis, St. P. & Sault Ste. M. Ry. Co. 96 Minn. 469, 105 N. W. 494, amounts have been approved which indicate that we cannot now hold that $2,000 is excessive in the present case.

The order appealed from is affirmed.