SCHLIESLEDER, Appellant, vs. MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*December 6, 1911—January 9, 1912.*

*Street railways: Injury to person crossing track: Contributory negligence: Special verdict: Inconsistency: Changing findings: Unnecessary questions: Court and jury: Appeal: Review.*

1. It is, as a matter of law, a want of ordinary care to step upon a railway track without looking both ways and listening for a car, and doing so at the last opportunity therefor in case of any reasonable probability, from the viewpoint of one so circumstanced, that a car is in dangerous proximity.

2. *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, and *Grimm v. Milwaukee E. R. & L. Co.* 138 Wis. 44, distinguished.

3. Plaintiff, waiting on a corner for a street car, saw it coming about a block away and started to run to the place where it would stop on the farther side of the street crossing. To reach such place he would have to cross both tracks of the street railway. After going about half the distance and reach-

Schliesleder v. Milwaukee E. R. & L. Co. 147 Wis. 668.

ing the first rail of the tracks, he looked and saw the car about half a block away, but did not look long enough to see how fast it was coming. Thinking he had time to cross both tracks and reach the stopping place of the car by the time it arrived there, he proceeded at a walk without looking again at the car, although he heard rumbling on the track. Just as he was about to step beyond the last rail he was struck and injured by the car. When he entered upon the second track the car was but a few feet away, and it ran but a few feet after the collision before coming to a full stop. The jury found (6) that plaintiff's failure to look for the car just before entering on the second track proximately contributed to his injury, but also answered in the negative the questions (7) whether, when he entered upon that track, the car was so near and running at such a rate of speed that a person of ordinary care in his position should have anticipated that a collision with the car would result unless its speed should be materially reduced, and (8) whether in entering upon that track as he did he was guilty of a want of ordinary care which contributed to his injury. *Held*, that the trial court did not err in changing the answers to the latter questions from "No" to "Yes," and in giving judgment for defendant on the verdict as changed.

4. The sixth finding above mentioned was a finding of efficient contributory negligence and, the jury having found both ways on that issue, the verdict as rendered would not support a judgment for plaintiff.

5. When, from the evidence upon any issue of fact, the truth of the matter is so manifest as to leave no reasonable ground for a difference of opinion, it is the duty of the trial judge, if requested, to decide it, and whether requested or not he is justified in so doing. When that duty arises it is a judicial duty and the court has no discretion in the matter.

6. The decision of the trial court in a considerate discharge of that duty will not be disturbed on appeal unless clearly wrong from the viewpoint of the appellate court, due heed being given to the trial judge's more favorable opportunity to reach a right conclusion.

7. The questions submitted for a special verdict should not be more numerous than is necessary to cover, singly, all material issuable facts which are controverted on the evidence; but the submission of mere unnecessary questions will not, except in an extreme case, constitute harmful error.

APPEAL from a judgment of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

Action to recover compensation for a personal injury.
Plaintiff was struck by a street car and injured.   The acci-
dent happened in daytime on a street where there was little
travel.   He went from his place to a near-by shop to deliver
a garment, intending to take the street car on his way back.
There was a double-track line on the street.   After doing his
errand he lingered inside the shop, keeping watch for the car
he desired to take.   It was to come from the right on the
farthest track.   He had a plain view of the track for the dis-
tance of a block or more away.   His location was in a corner
building with a corner entrance.   From a window in the rear
end of the shop he saw the car coming a block away and im-
mediately proceeded to reach the point where he was to take
passage.   He knew the car would make the crossing before
stopping, requiring him to travel in straight lines twice the
width of the street, about 130 feet, or in a diagonal line about
100 feet.   He assumed he would need to hurry and so started
on a run in the shorter direction.   After going about one
half the distance and reaching the first rail of the near-by
track, he looked for the coming car and observed it about half
a block away.   He did not look long enough to see how fast
it was coming, but thought he had time to reach the opposite
side of the next track and the point where the car would stop
by the time it reached such place.   He proceeded then at a
walk without taking further observation of the car.   He
heard rumbling along the track but proceeded regardless
thereof.   After traveling about one half the remaining dis-
tance and being about to make the last step which would place
him on the far side of the track the car was coming on and
out of its reach, it struck him.   When he was but a few feet
from the car he stepped in front of it.   The motorman saw
him as he approached the track and supposed, for a time, he
would make the crossing or observe the car and keep out of its
pathway.   When there was about fifty feet left the motor-
man saw there was danger and then did all he could to stop.

The jury found on the evidence that the motorman was not able to prevent the accident because the appliance for stopping the car was out of repair; also found that ordinary care was not exercised to signal the approach of the car and that defendant's want of ordinary care proximately produced the injury. As to plaintiff's conduct the jury found that his failure to look in the direction of the coming car before entry upon the second track proximately contributed to his injury; that when he stepped upon the second track the car was not so near and running at such rate of speed that a person of ordinary care, circumstanced as plaintiff was, should have anticipated that a collision with it would result unless the speed thereof were materially reduced; and that plaintiff was not guilty of want of ordinary care proximately contributing to produce the injury. Other findings were made which, together with those referred to, would have entitled plaintiff to judgment, if the verdict, either as made by the jury or as changed by the court, did not convict plaintiff of fatal contributory negligence. The court on motion changed the two findings before referred to on that subject made by the jury in favor of the plaintiff, to findings in favor of the defendant and rendered judgment accordingly dismissing the complaint with costs.

For the appellant there was a brief signed by *Rubin & Lehr,* attorneys, and *W. B. Rubin* and *Horace B. Walmsley,* of counsel, and oral argument by *Mr. W. B. Rubin* and *Mr. Walmsley.*

For the respondent there was a brief by *Van Dyke, Rosecrantz, Shaw & Van Dyke,* and oral argument by *James D. Shaw.*

MARSHALL, J. Counsel for appellant cite with confidence *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823; *Bain v. N. P. R. Co.* 120 Wis. 412, 98 N. W. 241; *Grimm v. Milwaukee E. R. & L. Co.* 138 Wis. 44, 119 N. W.

833; and *Sparks v. Wis. Cent. R. Co.* 139 Wis. 108, 120 N. W. 858, to support their contention that the trial court was manifestly wrong in concluding,—with aid of the jury finding that appellant failed to look in the direction of the coming car before entering upon the second track, proximately contributing to his injury; and notwithstanding their finding that a person of ordinary care, circumstanced as he was just before he stepped upon the second track, would not ordinarily have anticipated that the car would strike him unless the speed thereof was materially increased,—that appellant should have so anticipated and was guilty of fatal contributory negligence, and in changing the findings accordingly.

Neither of the cited cases establishes the principle contended for by appellant. They are to the effect that if one purposing to cross a street railway track uses his senses of sight and hearing both ways at a point where a person of ordinary care would naturally and reasonably expect to observe an approaching car in such proximity and under such circumstances that it might probably reach the contemplated place of crossing before he could make it, and neither hears nor sees one and then proceeds, within his calculation in that regard, he is not guilty of a want of ordinary care by holding to his course unless an approaching danger is thereafter brought efficiently to his attention; that is, having so listened or looked, or both, in case of there being opportunity therefor, such a person may proceed without taking another observation; but in neither case was it intended to invade the rule that to step upon a railroad track without looking both ways and listening for the dangerous proximity of a car, and doing so at the last opportunity therefor in case of any reasonable probability, from the viewpoint of one so circumstanced, of the dangerous proximity of a car, is want of ordinary care as a matter of law. The exception to that rule contended for so as to fit the facts of this case, would fatally invade it,—destroy a doctrine as regards the duty in such cases that has become elementary in the law of negligence.

The instances relied on were very exceptional, and decided, as they were, because exceptional. Care has to be constantly exercised in administering the law of negligence, not to fence in a principle intended to furnish a guide for trial courts, so far as one is feasible, by such numerous new exceptions, and extensions of old ones to accommodate new situations, or old ones viewed through the vista of a changed conception of man's duty to man and man's duty of self care, as to destroy the rule itself. Such a method of administering the law would rob it entirely of its vaunted, and properly administered, real scientific character, making it a mere method of compulsory arbitration and vindicating the claim sometimes made, that in the law of negligence each case is a law unto itself.

What has been said, keeping in mind that here the appellant started to run in the first place because the car was so near, showing that quick movements were thought to be necessary to enable him to seasonably reach his place for boarding the car; that when he looked before entering upon the first track, though he had, from the time he first looked, been going on a run, presumably, twice as fast as at a deliberate walk, and had traversed, perhaps, two thirds the required distance to clear the far track, the car had made one half the distance to his point of crossing; and the fact that he only stepped twice or three times, taking no more than a second or two, after he entered the pathway of the car before it struck him, and the still further fact that the car only went a few feet after the collision before coming to a full stop,—one can but appreciate how very foreign the cited cases are to the one in hand.

In the first case the person looked and did not see any car, though there was a clear view for some 150 feet, except for a part of the distance where there was interference from a standing car, within which area of interference a car ran from a point beyond the clear space in the brief period between the observation and one made a moment or two after. There was

no car dangerously near when the first view was taken and no opportunity to see one thereafter before the collision.

The second case did not involve a crossing accident.

In the third case the person was not a pedestrian,—that is an important element here. He had about eighty feet to go after observing a car 900 feet or more away and before reaching his point of interference with the track a stop was necessary to take on several passengers. He was occupied from the time he saw the car till the collision in turning with his horse and sleigh, which movement caused the sleigh to engage the track when it was immediately struck.

The last case did not involve a crossing accident.

So it will be seen that neither of the citations has even a remote bearing on this case. In each of two, under the peculiar circumstances, there was room to reasonably infer that the injured person might fairly, after performing the duty to look, have come to the conclusion that he could enter and clear the track before dangerous approach of a car. In one instance no car was in sight at all and the man only had some forty feet to go, while in the other the person had about eighty feet to travel while the car traveled about eleven times that far, and had to make, as the observer had reasonable ground to believe with certainty, a stop to take on several passengers, which of itself would give time to safely make the contemplated movement. Even under those peculiar circumstances, an exception to the rule of look and listen before entering upon the track was not easily found.

Here the appellant supposed, as we have seen, at the start, he would need to hurry to make the crossing. His second observation ought rather to have confirmed than to have negatived that view, yet he relapsed to a deliberate walk with the car only half a block away, he having traveled at the most some two thirds his distance since seeing it a block away, and that too without taking any view to see at what speed the car was moving. Evidently, appellant was thinking only of get-

ting to the place for boarding the car in time, not of keeping
out of its pathway. He seems to have depended entirely
upon the motorman not to obstruct his pathway.

Counsel present the case on the part of complainant as if,
had the court not changed the answers, plaintiff would have
been entitled to judgment, overlooking the fact that, in an-
swer to the sixth question, the jury found that his failure
to take a second look for an approaching car proximately con-
tributed to his injury, not appreciating that the finding was
not, merely, that such failure contributed to the injury, but
did so proximately. We must assume the trial court in-
structed the jury respecting the significance of the term
"proximately." Involved therein was the element of reason-
able anticipation, making the omission fatal negligence. In
other words, amplifying the finding, it is to the effect that
appellant failed to look in the direction of the coming car
just before entering upon its pathway at such time and in
such circumstances that a man of ordinary care should rea-
sonably have apprehended that his conduct might probably
endanger his personal safety. It was a finding of efficient
contributory negligence and as plainly so as the answer which
the court changed acquitting appellant of such negligence.
In other words, the jury found both ways on the important
issue, so that in no event could a judgment have been based
thereon in favor of appellant.

Little need be said on the subject discussed at some length
respecting under what circumstances the court should decide
an issue of fact raised by the pleadings. It has no discretion
in the matter one way or the other in the finality. If the case
warrants such a disposition, then the judicial duty arises to
act if challenged in respect to the matter in a proper way, and
justifies it whether requested or not. The duty arises only
when the truth of the matter, in the judgment of the court,
is so manifest from the evidence as to leave no reasonable
ground to find otherwise. Whether such situation exists in

any instance where the question is raised, is strictly of judicial cognizance, and as plainly so as any duty which a judge has to perform under his oath of office. The impatience manifested, now and then, because of an exhibition of judicial stamina which enables one to promptly, firmly, and considerately perform that duty, is entirely out of place. Such impatience, often leading to harsh criticism, springs from a false conception of our judicial system, or a disregard of it, for some reason or other, which operates, from a proper viewpoint, to turn the finger of criticism upon the false conceptor. The system is grounded on the written law,—placed there among the fundamentals by vote of the people when they acted in the formation of the government; where it must remain and be vindicated on all proper occasions till removed in the same considerate, significant manner of its adoption, or as therein authorized.

The trial judge, in this case, evidently approached the performance of his duty to act on the motions to change the verdict, with full appreciation of such duty. That he discharged that duty considerately cannot be doubted. That trial administrative efforts of that nature are in an environment more favorable for a right conclusion than is afforded by reading the printed record, has been said over and over again, and not too often. The very nature of the situation, sound public policy, and established principles of law as well, require that trial judges in deciding such matters should have the encouragement of consciousness that the result of their efforts will not be disturbed unless clearly wrong from the viewpoint of the appellate court, due heed being given to such trial judge's more favorable opportunity to determine the matter.

In view of the foregoing, no efficient reason is perceived for disturbing the decision changing the answers. The trial court may well have thought the finding of contributory negligence against appellant, in answer to a question which did not comprehensively disclose to the jury the effect of it, was

their most intelligent unbiased conclusion, and with that undisturbed and undisturbable as it was, in view of the undisputed fact that appellant stepped in front of the car when it was almost to him and he plainly heard the noise of its coming,—that a judgment acquitting him of contributory negligence could not have any foundation in the evidence.

Complaint is made because of the number of questions submitted to the jury. According to a long line of decisions there was no harmful error committed in that field. That is all that need be said. That the trial court did not follow the frequent advisory admonitions of this court, there is some room to claim. To closely follow the scheme of the Code, as many times explained by this court, is to win renown in trial jurisdictions. The verdict was composed of thirteen questions. All issues covered by the pleadings, of which there was evidence for consideration by the jury, could have been covered, singly, by six or seven questions. The additional number tended to confuse, and possibly did so, resulting in the inconsistency in the verdict we have referred to. Every material issuable fact controverted on the evidence should be covered, each by its appropriate question, framed to present it clearly and with as few words as practicable. As a rule, every additional question, either covering a mere evidentiary matter or a controverted fact in issue in a second form, or splitting up such an issue into minor features, tends to defeat the very purpose of the special verdict law. However, it would take an extreme case of mere unnecessary questions to constitute harmful error. That such is the case, however, should not promote inattention to the proper framing of verdicts.

*By the Court.*—The judgment is affirmed.