PETERS, Appellant, vs. THE MILWAUKEE ELECTRIC RAILWAY & LIGHT COMPANY, Respondent.

*February 6—March 5, 1935.*

For the appellant there was a brief by *I. B. Padway,* and oral argument by *Mr. Padway* and *Mr. Max E. Goldsmith,* both of Milwaukee.

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

FRITZ, J. Plaintiff contends that the court erred in directing a verdict for the defendant in this action to recover damages for personal injury sustained by plaintiff on March 9, 1931, upon being struck by one of defendant's electric streetcars, while he was walking across defendant's tracks at a street intersection. Viewed most favorably to the plaintiff, the evidence admitted finding the following facts: Plaintiff was struck by a south-bound car while he was walking westward on the north crosswalk. When he was about to step onto that crosswalk, at the east curb of the street, he had observed that the car was about a block to the north, and he planned to board the car at the northwest corner of the intersection. Upon walking a few steps from the east curb, he waited for several north-bound automobiles to pass and then continued westward. When he was in the center of the north-bound car track, about seven and three-quarters feet east of the nearest rail of the south-bound car track, he again looked northward, and saw that the approaching south-bound car was fifty feet away. He held up his hand as a signal to the motorman, and claims that the latter responded by nod-

ding, which plaintiff interpreted as an affirmative answer. The motorman admitted seeing plaintiff's raised hand, but denies that he nodded in response. Plaintiff then, without looking again toward the approaching car, walked at a more rapid rate—but without running—the remaining distance of seven and three-quarters feet to the east rail of the southbound car track and some four or five feet beyond, when he was struck by the car. He testified that, on making his last observation as to the car, he did not make any estimate as to its speed, but that "it started to slow down and then started ahead real fast again, as though he was going to stop and did not." On the other hand, other witnesses testified that the car approached at the rate of twelve to fifteen miles per hour; that it was about six feet from the plaintiff the instant he stepped from safety to danger; that as soon as the motorman saw that plaintiff had started to walk faster, he had applied the emergency brakes when ten to fifteen feet from plaintiff, and did everything that he could do to stop the car; and that he brought it to a stop in thirty-five feet, at a point which was twenty feet beyond the place of collision.

In answer to plaintiff's contention that the court erred in directing a verdict for defendant, the latter contends that, as it is undisputed that plaintiff failed to make an observation for the car at the last moment of opportunity before entering the zone of danger, there was no issue for the jury as to that fact, and that his failure in that respect constituted contributory negligence, as a matter of law, which defeated his right to recover. It is well established that—

"Due care in approaching a railway track can be satisfied only by the full use of the senses of sight and hearing at the last moment of opportunity before passing the line between safety and peril. *Schroeder v. Wisconsin Cent. R. Co.* 117 Wis. 33, 38, 93 N. W. 837." *Goldmann v. Milwaukee E. R. & L. Co.* 123 Wis. 168, 170, 101 N. W. 384, 385; *Meissner v. Southern Wis. R. Co.* 160 Wis. 507, 509, 152 N. W. 291.

Although the collision involved in *Goldmann v. Milwaukee E. R. & L. Co., supra,* was between a horse and a street-car, the court then said, in relation to the duty of a foot traveler, that "the single step onto the track is negligence unless, before taking it, he assures himself, by observation, of its safety, if the view is unobstructed." That is in accord with the established rule, which, in *White v. Chicago & N. W. R. Co.* 102 Wis. 489, 493, 78 N. W. 585, 587, was stated as follows:

"No less certain and absolute is the duty to observe and heed the danger that is in sight. To a person approaching a railroad track on foot, the danger line is so narrow, and may be avoided with so little effort, that the law justly thrusts the obligation of exercising that effort upon him. If he fails to use common prudence, and is injured, he is without remedy." See also *Schliesleder v. Milwaukee E. R. & L. Co.* 147 Wis. 668, 134 N. W. 144; *Lotharius v. Milwaukee E. R. & L. Co.* 157 Wis. 184, 188, 146 N. W. 1122; *Schmidt v. Milwaukee E. R. & L. Co.* 158 Wis. 505, 508, 149 N. W. 221.

In the case at bar it is undisputed that, after last observing the car, when he was seven and three-quarters feet from the nearest rail on which it was approaching, plaintiff walked that distance and entered the pathway of that car, which constituted a zone of danger, without again looking toward it to ascertain whether he could cross in safety ahead of it; that, at the moment he finally entered that zone of danger, he could readily have observed, by looking to the north, that the car was continuing to approach in such a manner as rendered it impossible to walk across its pathway in safety; and that, if he had so observed, he could readily have halted instantly, at every step which he was taking, instead of continuing to walk into that zone of danger. Traveling as he was on foot—and not running—with his movements under easy and immediate control, he had no such momentum to overcome, and no such time-taking operation to perform, as make it impossible for a traveler by motor or horse-drawn vehicle to stop instantly. The substantial differences in those respects between

a traveler on foot and a traveler by vehicle, materially affect the proposition as to what constitutes the last moment of opportunity before entering the zone of danger. Although two seconds before entering the zone of danger may be the last moment of opportunity for an automobile driver to take the required last observation, under such circumstances as existed in *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 669, it is obvious that no such length of time between the taking of that last observation and the entering of the zone of danger should be permitted to elapse in the case of a pedestrian required to exercise due care for his safety.

Consequently, in that respect, the decisions in such cases as *Dahinden v. Milwaukee E. R. & L. Co., supra,* and *Grimm v. Milwaukee E. R. & L. Co.* 138 Wis. 44, 119 N. W. 833, are inapplicable. On the other hand, squarely in point in respect to the conduct and resulting contributory negligence of the plaintiff in this case is the following statement in *Lotharius v. Milwaukee E. R. & L. Co., supra,* page 188:

"It is undisputed that the plaintiff was fully aware that the street cars were then running on these tracks, and that a glance to the north or south, while standing in this dangerous position, would have informed him of the approach of any street car and enabled him to step out of the course of the car and thus have avoided the danger. The facts alleged clearly show that the plaintiff stepped into this dangerous place, knowing that a street car could not pass without colliding with him; that if he had momentarily glanced to the north and south he could have observed approaching cars; and that under the circumstances there was nothing to prevent him from stepping aside into a place of safety and avoiding a passing car. From such conduct on his part but one reasonable inference can follow, namely, that he omitted to exercise the care that ordinarily prudent persons, under similar circumstances, would exercise for their safety; and there can be no question but that the plaintiff's conduct in this regard proximately contributed to cause the injuries of which he complains in this action."

Even if, as plaintiff claims, he interpreted an alleged nod by the motorman as an affirmative response to his raised

hand signal of his desire to become a passenger, that did not prevent or excuse him from performing his absolute duty of looking just before stepping into the zone of danger toward the approaching car, and thus discovering its imminent approach and avoiding entering upon its pathway, as he could readily have done by exercising ordinary care. His own negligence in those respects is not excused because of any negligence on the part of the motorman. The latter's alleged nod did not entitle plaintiff to assume that the motorman was yielding the right of way to him, when upon a mere glance toward the car just before stepping into its pathway, it would have been obvious to him that, because of the proximity and continuing speed of the approaching car, he could not cross in safety. As was said in *Goldmann v. Milwaukee E. R. & L. Co., supra,* page 171, that no such right of way existed "when, as established by the result, some diminution of the speed of the car was necessary to enable him to pass in safety, is fully declared in that case [*Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823] and in *Stafford v. Chippewa Valley E. R. Co.* 110 Wis. 331, 335, 85 N. W. 1036; but whether it did or not is immaterial. It may be the most obvious negligence to exercise a clear right, and, if so, and contributing, it precludes plaintiff from recovery." Although sec. 331.045, Stats. 1931, relating to comparative negligence, changed the rule as to the effect of contributory negligence as a defense, that modification of the rule is not applicable in actions to recover for injuries sustained prior to June 16, 1931.

The provision in sec. 85.44 (1), Stats., that—

"The operator of any vehicle shall yield the right of way to a pedestrian crossing the highway within any marked or unmarked crosswalk at an intersection, . . ."

is inapplicable. Sec. 85.10 (1), Stats., expressly provides that there shall be excepted from the meaning of the word "vehicle," as used in secs. 85.10 to 86.86, Stats., "vehicles

used exclusively upon stationary rails or tracks." As was said in *Wisconsin P. S. Co. v. Railroad Comm.* 185 Wis. 536, 540, 201 N. W. 977:

"A street railway is not subject to the rules of the road, for reasons which are self-evident, while the public in general must obey such rules. The street railway has a superior right to that portion of the street covered by its tracks, and while the public in the use of the street is not excluded from that portion, nevertheless it must give way to the passage of the street railway company's cars."

*By the Court.*—Judgment affirmed.

FOWLER, J. (*dissenting*). I dissent from the decision of the court in this case. I concede that the decision would be correct, and that the cases cited in the opinion of the court would support the decision, but for the fact that the jury might properly infer from the evidence that the plaintiff was invited by the motorman to cross ahead of the street-car, and that the motorman should have stopped the car before it reached the plaintiff's line of travel. None of the cases cited in the opinion contains either of these facts. If the motorman did not extend the invitation, the plaintiff was negligent as matter of law; or, if the invitation was given, he would have been negligent, as matter of law, if the car could not have been stopped before reaching the crosswalk when the invitation was given. The opinion of the court ignores these evidentiary facts.

The evidence is undisputed or the jury might properly infer from it that the plaintiff lived in an apartment-house and customarily took a street-car to go to his work down-town in the morning. The cars regularly stopped, on signal, across the street from the apartment. The plaintiff left the apartment-building to take a street-car as usual. He saw a street-car coming a block away. He took a step or two into the street, stopped for the passage of two automobiles, and

started across the street to take the street-car. There was a double track at the place, and the street-car he was to take was on the far track. He came to the near (north-bound) track, stopped between the rails, and signaled the approaching street-car. The motorman nodded his head, applied his brakes, and plaintiff assumed he was going to stop for him to board the car. Plaintiff also heard the air when the brakes were applied, and heard the screeching of the wheels after they slid on the rails. Plaintiff then started across the track in front of the approaching car which was fifty feet away when plaintiff signaled, stepping fast, but not running. The car struck him when he was about the middle of the track. It was a one-man car, entered at the front on the side nearest the curb, the far side from the plaintiff as he passed in front of it. The car was moving at the rate of twelve to fifteen miles per hour, and could be stopped under the conditions present in from twenty-five to forty feet. The plaintiff did not look again after observing the motorman's indication that he would stop the car for him to board it. The plaintiff did not say so, but he manifestly judged that he might safely cross the track. He quickened his pace. It may as rightly be inferred that he did so to avoid delay in boarding, as that he did it to avoid being struck. He may rightly be presumed to have been watching his step as he started on after receiving the motorman's signal, which is often, if not ordinarily, quite necessary to do in hastily crossing a street in the early morning in the fore part of March in this climate. The burden of proving contributory negligence is on the defendant. It is for the defendant to produce evidence to exclude all reasonable inferences of conduct consistent with due care.

Under the directed verdict, the question of the defendant's negligence and that of the plaintiff's contributory negligence are involved. The opinion concedes that the negligence of the motorman was for the jury. The question of contributory negligence seems clear to me to have been for the jury also. Taking the evidence in the view most favorable to the

plaintiff, the plaintiff was invited to cross ahead of the car. The car could be stopped and the plaintiff might rightly assume it would be stopped before it reached the crosswalk. The distance he had to travel to clear the street-car was approximately fourteen feet, if the car kept in motion, but the car might have been stopped before it reached plaintiff's line of travel. The jury might rightly infer that the plaintiff's observation, and his inference that the car would stop before reaching the crossing, were made with due care, and that there was no danger of his being struck if the car had been brought to a stop as it should have been.

None of our own decisions involve a pedestrian passing in front of a street-car under similar circumstances. Several cases involve the passing of automobiles and horse-drawn vehicles, in front of street-cars, and establish the principle that when a driver has on observation formed a judgment that he has time to clear an on-coming street-car and attempted to pass ahead of it, the question of his negligence is for the jury. *Grimm v. Milwaukee E. R. & L. Co.* 138 Wis. 44, 119 N. W. 833; *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 84 N. W. 823; *Karshian v. Milwaukee E. R. & L. Co.* 192 Wis. 269, 212 N. W. 643. I perceive no reason why the same rule should not apply to a pedestrian under the circumstances here present. The lapse of two seconds without again looking between the making of an observation by a motorist and his reaching the zone of danger was held not to convict the motorist of negligence as matter of law. *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 171 N. W. 669. Here barely a second elapsed between the time of plaintiff's last observation of the car and his reaching the limit of the zone of danger. The plaintiff at four miles per hour would travel six feet a second. He was seven and three-quarters feet from the near rail of the track on which the car was moving. The amount of the overhang of the car does not appear in evidence, but it is a matter of common knowledge that it was considerable, and it may reasonably

be assumed to be nearly or quite one and three-quarters feet beyond the rail. The last opportunity to observe would necessarily have to be exercised a foot or two before reaching the line of the overhang. The *Goldmann Case* construes the words "last moment of opportunity" in the statement quoted in the opinion of the court herein to the effect that one must use his sense of sight "at the last moment of opportunity before passing the line between safety and peril," as not meaning the precise last moment. The stated rule applies to drivers of horse-drawn and motor vehicles as well as to pedestrians. And if a lapse of two seconds in case of a horse-drawn vehicle does not as matter of law convict the driver of negligence under the last-moment rule, I am unable to see that a lapse of one second convicts a pedestrian of it. An observation made within six feet of the line of the zone of danger may not improperly be considered as made at the last moment of observation within the rule.

While decisions of this court heretofore rendered do not reach the point, cases in other jurisdictions hold, upon what seems to me to be good reason, that the response by a motorman upon a signal to stop indicating intention to do so, upon which a pedestrian relies in attempting to cross ahead of a street-car, makes the question of the pedestrian's negligence for the jury. *Cuddy v. Boston E. Ry. Co.* 208 Mass. 134, 94 N. E. 251; *Simoneau v. Pacific E. Ry. Co.* 166 Cal. 264, 136 Pac. 544; *Connor v. Pittsburgh R. Co.* 50 Pa. Super. 629. In the *Cuddy Case, supra,* the street-car was at most only twenty to thirty feet from the pedestrian when he signaled, and was traveling at eight to ten miles per hour. The instant case is much stronger in its facts to support submission of the question of negligence to the jury.

It is true that a pedestrian has more complete control over his movements than a motorist has over his car or a driver of a horse-drawn vehicle has over those of his vehicle, and that a stricter rule may properly be applied to pedestrians in crossing street-car tracks ahead of street-cars than to such

drivers. But the fact of the invitation given by the motor-man, coupled with his ability to stop before reaching the crosswalk, and his duty to do so implied from his invitation and his ability, seems to me to overbear the effect of the distinction in the instant case.

For the reasons above stated, the judgment of the circuit court should, in my opinion, be reversed.

I am authorized to state that Mr. Justice WICKHEM concurs in this dissent.