DOMINICZAK and wife, Appellants, vs. MILWAUKEE ELECTRIC RAILWAY & TRANSPORT COMPANY, Respondent.*

*October 17—November 20, 1945.*

* Motion for rehearing denied, with $25 costs, on January 8, 1946.

*Max Raskin* and *William F. Quick,* attorneys, and *Walter D. Corrigan, Sr.,* of counsel, all of Milwaukee, for the appellants.

For the respondent there was a brief by *Shaw, Muskat & Paulsen* of Milwaukee, and oral argument by *Carl Muskat.*

FOWLER, J. The case involves a collision between a pedestrian and a streetcar at the intersection of two streets near the south city limits of Milwaukee, which we will designate as Thirteenth and Harrison streets, while crossing Thirteenth

street ahead of an approaching streetcar. Thirteenth street is a north-and-south street carrying double car tracks, the west track for southbound and the east for northbound cars. The northwest corner of the intersection was a regular stopping place for southbound and the southeast corner for northbound cars. The plaintiff, Evelyn Dominiczak, hereinafter referred to as the "plaintiff," was intending to take a northbound car to the city business district. She approached Thirteenth street walking east on the south sidewalk of Harrison street. According to her testimony as she reached the west curb of Thirteenth street she saw a southbound car stopped for passengers across Harrison street and saw an approaching northbound car coming from the south at a bridge one hundred fifty-five feet away. She also saw a lady standing at the regular stopping place for northbound cars, as if waiting to take the approaching car. The plaintiff inferred that the northbound car would stop to take on the lady as a passenger. She heard the car coming but did not hear its gong sounding. The motorman was ending his run and intending to go to the carbarns located north of Harrison street on Mitchell and South Kinnickinnic streets and not to stop at Harrison street. His car bore a sign which plaintiff did not see "Second and Greenfield" which indicated that it was going to the carbarns. Another northbound car was following a block behind for carrying northbound passengers. When crossing the southbound tracks the plaintiff, according to her testimony, saw the northbound car again one-half way from the bridge, and when she looked again she was crossing the northbound tracks and the northbound car was then twenty-five feet away. She was struck by the east overhang of the streetcar. The motorman did not see the plaintiff at all. By his testimony he was looking at the lady who was at the stopping place for northbound cars and sounding the gong to indicate he would not stop for her. The plaintiff heard the southbound car starting up to cross the street.

From this testimony we think the jury might properly infer that the plaintiff exercised ordinary care in crossing the street, unless for a ruling of the trial judge to the effect that in crossing a streetcar track a pedestrian must look for an approaching car at the last moment before entering the zone of danger. It is obvious, of course, that had the plaintiff looked south just before reaching the line of the west overhang of the streetcar, at a point about twenty inches from the west rail of the northbound car track, she could have stopped there and avoided being struck. But we think no such hard-and-fast rule can properly be applied unless to a pedestrian intending to board an approaching car directly from a stopping place for the car without crossing ahead of it, or to one crossing the street ahead of it, failing to look when nearing the car rail first reached. If the plaintiff had been struck by the southbound car, and had not looked at the last moment before entering the zone of danger, the ruling of the court under the instant facts would have been proper. The situation next above first stated was involved in *Nye v. Milwaukee E. R. & T. Co.* 246 Wis. 135, 16 N. W. (2d) 429. But if, when the instant plaintiff started across the street it was a reasonable inference, that is, a reasonable judgment to form from all the circumstances that the northbound car would stop at the regular stopping place for northbound cars—she was not necessarily negligent as matter of law. We think that it was a jury question whether in the instant case the plaintiff formed a judgment and whether, if so, it was a reasonable one,—such a one as an ordinarily intelligent and prudent person might reasonably form. This is the rule of *Tesch v. Milwaukee E. R. & L. Co.* 108 Wis. 593, 609, 84 N. W. 823. That rule has been subsequently approved in *Hanlon v. Milwaukee E. R. & L. Co.* 118 Wis. 210, 220, 95 N. W. 100; *Goldmann v. Milwaukee E. R. & L. Co.* 123 Wis. 168, 190, 101 N. W. 384; *Dahinden v. Milwaukee E. R. & L. Co.* 169 Wis. 1, 3, 171 N. W. 669; *Speakes L. & C. Co. v. Duluth St. R. Co.* 172 Wis. 475, 481, 179 N. W. 596;

*Karshian v. Milwaukee E. R. & L. Co.* 192 Wis. 269, 272, 212 N. W. 643. In none of the cases above cited, except the last, was the person to whom the rule of the *Tesch Case* was applied a pedestrian. In the last case it is said (p. 272) :

"It is not the law that a pedestrian under all circumstances, upon observing an approaching car, must yield the right of way to the streetcar and must in the exercise of due care keep from the tracks so as to prevent a collision."

This is to the effect that the rule of the *Tesch Case, supra,* is applicable, in a proper case, to pedestrians. It is also true that in several cases broad statements have been made that taken literally might be taken as justifying the rule here applied by the trial judge. But while that rule was justifiably applied to the facts of those cases, we consider the instant facts, as the jury from the plaintiff's testimony might properly infer them to be, are in material respects distinguishable. One of these cases is *Evanich v. Milwaukee E. R. & L. Co.* 237 Wis. 111, 295 N. W. 44. The trial judge based his decision directly on·this case. While in some of its facts the *Evanich Case* is like the instant case it is clearly distinguishable in controlling respects. We have examined the printed case on file. There were only three witnesses as to the circumstances leading up to the collision. Two were friends of the person struck by a streetcar who was instantly killed, and the other the motorman. The motorman, as here, did not see the person struck until momentarily before the collision. One of the plaintiff's witnesses saw the deceased on the northeast corner of an intersection. A double streetcar track was on an east-and-west street. The deceased went directly west on the east-and-west crosswalk until he neared the west curb of the north-and-south street, when he cut the corner to the north-and-southwest crosswalk and from there went south toward the east end of a marked safety island for eastbound streetcar passengers. The deceased was hurrying with raised arm waving, and an eastbound streetcar was approaching. No one was waiting at the stop-

ping place to board the car. The deceased was not "sprinting," but definitely "running," manifestly "racing" in an attempt to cross ahead of the streetcar. As he reached the middle of the south car tracks he was struck. The witness was watching the deceased to see whether he would get across ahead of the car or get struck. He did not see the impact as the streetcar reached a point that cut off his view when the deceased got on the south tracks. The other witness for the plaintiff was driving west in an automobile. He first noticed the deceased at the moment preceding the impact. The deceased was then in the middle of the south car tracks, his hand in the air. There was such automobile traffic at the intersection that the witness came near colliding with another automobile. There was no automobile traffic at the instant intersection. The streetcar there involved went one hundred thirty-five feet past the intersection before stopping, though the emergency brake was applied the moment the motorman saw the deceased, which indicates a speed far greater than the twelve or fifteen miles per hour here involved. It is manifest that the deceased, from the time he started from the northeast corner of the intersection, was hurrying to get across the street ahead of the car—he was definitely taking a known chance rather than forming a reasonable judgment that he had time to get across ahead of the car. The case does not reach the precise point here involved.

Another case strongly relied on by the defendant is *Peters v. Milwaukee E. R. & L. Co.* 217 Wis. 481, 259 N. W. 724. It is more nearly in point than the *Evanich Case, supra,* but also falls short of the precise situation here involved. The plaintiff in that case started across a street on its north crosswalk to take an approaching southbound car at a regular stopping place. He had ample time to cross but for south-moving automobiles. He stopped in the middle of the street to allow these to pass. When they had passed the streetcar was fifty feet away. He signaled the motorman to stop for him to board and the motorman nodded his head which the plaintiff

interpreted as an invitation to cross ahead. The plaintiff was then seven and a half feet from the east rail of the southbound track. He took his eyes off from the car and started to cross the track without again looking and was struck by the car. Two of the judges were of opinion that the nod of the head of the motorman was properly interpreted as an invitation to cross the street and considered that this court should have followed the rule of other jurisdictions (see page 490 of dissent) that "the response by a motorman upon a signal to stop indicating intention to do so, upon which a pedestrian relies in attempting to cross ahead of a streetcar, makes the question of the pedestrian's negligence for the jury." Here no invitation by the motorman is involved but the plaintiff had two indications that the car would stop, one that the car was slowing down when she saw it one hundred fifty-five feet and seventy-five feet away and the other that a woman was standing at a regular stopping place of the car. By the plaintiff's testimony she was not "racing" to beat the car, as the only person who saw Evanich inferred he was doing prior to the moment he was struck, and the plaintiff in the *Peters Case,* after stopping for automobiles to pass, formed no reasonable judgment as to having time to cross ahead of the car before entering the zone of danger as the jury might infer the instant plaintiff did. The other cases relied on by the defendant are cited and discussed in the *Peters Case* and are more clearly distinguished than that case from the instant case.

Without further discussion we rule that giving the evidence the interpretation most favorable to the plaintiff that it will reasonably bear, as we are required to do on reviewing the granting of a motion for a directed verdict, it raises a jury question both as to negligence of both parties and as to comparative negligence if negligence of both parties be found.

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded with directions to vacate the judgment and order a new trial.

FRITZ, J., dissents.